UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TRACY RILEY,

       Plaintiff,

vs.

CASE NO.:

CITY OF ST. AUGUSTINE,
JASON S. ETHERIDGE, individually under
color of law, MICHELLE OCHKIE,
individually under color of law, and JEFF
COLLINS, individually under color of law,

and

ST. JOHNS COUNTY SHERIFF'S OFFICE

       Defendants.

_____/

## COMPLAINT

### PRELIMINARY STATEMENT

1.     This is an action filed by the Plaintiff seeking relief for unlawful deprivation of rights secured by the 4th, 5th, and 14th amendments to the United States Constitution, Title 18, USC Section 242, 42 USC Section 1983. Jurisdiction is founded on 28 USC Section 1331 as this matter arises from allegations regarding the United States Constitution.

2.     Pendent State claims are added as there is a common nucleus of fact.

### PARTIES

3.     At all times alleged hereto Plaintiff, Tracy Riley (herein identified as "RILEY"),

1

was a resident of the City of St. Augustine, State of Florida.

4.    At all times alleged hereto, Defendant, the City of St. Augustine (herein identified as "CITY"), was a municipal entity established by and through the Constitution of the State of Florida.

5.    At all times alleged hereto, Defendant CITY, pursuant to its City Charter, established the City of St. Augustine Police Department (herein identified as "POLICE").

6.    At all times alleged hereto, Defendant Jason S. Etheridge (herein known as "ETHERIDGE") was a Law Enforcement officer employed by and through the Defendant CITY in a supervisory capacity, by and through the City of St. Augustine Police Department. This action is filed against Defendant ETHERIDGE individually acting under color of law.

7.    At all times alleged hereto, Defendant Jeff Collins (herein after "COLLINS") was a law-enforcement officer employed by and through CITY and by and through the POLICE . This action is filed against Defendant COLLINS   individually acting under color of law.

8.    At all times alleged hereto, Defendant Michelle Ochkie (herein known as "OCHKIE") was a law-enforcement officer employed by and through CITY and by and through POLICE. This action is filed against Defendant   OCHKIE individually acting under color of law.

9.    At all times alleged hereto the Defendant St. Johns County Sheriff's Office (herein after "SHERIFF") was a Law Enforcement entity established by and through the Constitution of the State of Florida.

2

## COUNT I

### EXCESSIVE FORCE/UNREASONABLE SEARCH
### AND SEIZURE CITY OF ST. AUGUSTINE: 42 USC SECTION 1983

1. On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4285 US Highway 1 South, St. Augustine, Florida, 32086, with a cashier's check in hand in the amount of $100,000.

2. On that date Plaintiff was in a bank manager's office, sitting at a desk, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

3. Plaintiff received the check from an individual M.M. (herein known as "M.M.") in exchange for the sale of Plaintiff's sailboat to M.M.

4. Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the Defendant CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force (strangulation) and intimidation.

5. As a result of those allegations by M.M., Defendant CITY, by and through ETHERIDGE, COLLINS and OCHKIE, and other of the Defendant CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

6. The bank officer previously left the office. The Plaintiff was sitting at the desk alone with no other bank employees in the office..

7. Without provocation or resistance from the Plaintiff, ETHERIDGE directed Plaintiff to "hit the floor".

8. In response, the Plaintiff began to move towards the floor.

9. Without provocation or resistance from the Plaintiff, ETHERIDGE grabbed the back of

3

Plaintiff's shirt by the neck and forced Plaintiff to the floor.

10. With the assistance of COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

11. COLLINS placed his knee on the left side of Plaintiff's neck.

12. ETHERIDGE placed a handcuff on Plaintiff's left hand.

13. With his knee on Plaintiff's lower back, and with COLLINS' knee on the left side of Plaintiff's neck, ETHERIDGE forcefully wrenched Plaintiff's right arm upward towards Plaintiff's shoulders and the midline of Plaintiffniff's head attempting to place the handcuff on the Plaintiff.

14. There was a loud pop in Plaintiff's right shoulder and neck and Plaintiff felt immediate pain.

15. ETHERIDGE noted Plaintiff's right arm and shoulder was hanging loosely and stated, "huh," and appeared to be surprised.

16. Plaintiff went into shock, was shaking, and had difficulty breathing.

17. Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from Defendant CITY by and through ETHERIDGE, COLLINS, and OCHKIE, SHERIFF and other Law Enforcement officers.

18. There was no response nor assistance.

19. ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist.

20. Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

21. COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

4

22. Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from Defendant CITY, by ad through ETHERIDGE, COLLINS, OCHKIE, SHERIFF, and other Law Enforcement officers.

23. There again was no response nor assistance.

24. While face down on the floor, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

25. While Plaintiff was in pain and shock, sweating and shaking, and having trouble breathing, Defendant CITY, by and through ETHERIDGE and COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

26. Plaintiff again yelled out from immediate extreme pain.

27. Plaintiff again requested medical assistance.

28. The request for medical assistance from Plaintiff was again ignored by Defendant CITY, by and through ETHERIDGE, COLLINS and OCHKIE, SHERIFF and other Law Enforcement officers present.

29. After being picked up, Plaintiff's hands, arms and wrists then moved downward.

30. At all times alleged hereto, Defendant CITY, by and through OCHKIE, was aware of these actions of ETHERIDGE and COLLINS, failed to protect Plaintiff from harm, failed to intervene, and failed to obtain medical assistance.

31. At no time while being restrained and handcuffed did the Plaintiff offer any resistence, provide reason to be believe Plaintiff would resist, and complied with any and commands of Law Enforcement.

32. At all times alleged hereto SHERIFF was, by and through SHERIFF'S deputies, aware of these actions and failed to proceed to protect the Plaintiff from harm, failed to intervene, and failed to provide medical assistance.

33. From the time that ETHERIDGE entered the office, ETHERIDGE was shaking. At some point COLLINS asked ETHERIDGE if he wanted COLLINS to take over to which ETHERIDGE said no.

34. During the time Plaintiff was detained and placed in handcuffs, Plaintiff had a right, pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, to be free from excessive force and unreasonable search and seizure, USC Section1983.

35. The use of force in restraining an individual and in the use of handcuffs must be reasonably proportionate to the need for that force. and when applying force to an individual who is not resisting, should not be applied with undue severity to an obedient detainee/arrestee when restraining an individual such as Plaintiff, who was offering no resistance, and failure to do so would be a violation of an individual citizen's constitutional rights.

36. The conduct of Defendant CITY, in restraining Plaintiff and placing handcuffs on Plaintiff, by and through the actions of ETHERIDGE, COLLINS, with OCHKIE failing to intervene, and in the use of force in seizing the Plaintiff, violated Plaintiff's constitutional right to be free from unreasonable search and seizures and excessive force.

37. The Defendant CITY is liable to the Plaintiff in the use of force of its employees in detaining the Plaintiff, and the placement of handcuffs on the Plaintiff, in that Defendant CITY has allowed its policies or customs of excessive force to continue, has been indifferent to the use of force, and/or has been grossly negligent in failing to train

6

subordinates and in restraining subordinates.

38. The Defendant CITY has been alerted to the regular use of excessive force by its officers, but has nonetheless exhibited deliberate indifference to such excessive force, the deliberate indifference causing the violation of Plaintiff's constitutional rights in this case.

39. Specifically, the aforesaid event was not an isolated incident.

40. The Defendant CITY was previously aware over an extended period of time of several complaints filed against Defendant CITY of allegations of excessive force against the CITY'S officers and subsequent investigations, wherein Defendant CITY, although on notice, failed to properly train and manage subordinates.

41. Rather than instituting additional training to ensure that incidents regarding excessive force did not  reoccur, Defendant CITY has allowed the actions of its officers to continue and/or failed to recognize the need to train and/or retrain.

42. There were an estimated twenty (20) complaints by various of Defendant CITY'S citizens of excessive force regarding Defendant CITY'S Law Enforcement officers over an extended period of ten (10) years prior to the incident at issue beginning on or about December 4, 2009 until on or about March 27, 2018, only three months prior to this incident.

43. Several of the complaints raised allegations of excessive force during a single incident involving more than one of Defendant CITY'S officers.

44. Some were repeated violations against the same officer.

45. While the allegations have been either unfounded, not sustained or the officer exonerated, the Defendant CITY does not have an adequate mechanism in place, when there are a

7

number of complaints of excessive force against one of Defendant CITY'S officers, against more than one officer during a single incident, or due to the number of incidents over a course of time, to retrain its officers either singularly nor as a department.

46. The Defendant CITY additionally does nor have a policy nor procedure to objectively review and investigate complaints of excessive force through the use of a civilian review.

47. At the time of the incident, Defendant CITY additionally had no procedures in place to document injuries caused to detainees/arestees by its Law Enforcement officers injured during detention and/or arrest when detainees such as Plaintiff who were not resisting who suffered physical injury as a result of the actions of Defendant CITY'S officers.

48. Defendant CITY further did not have adequate policies and procedures in effect to maintain records of injuries sustained by detainees/arrestees as a result of the actions of its Law Enforcement officers despite having being on notice of more than twenty (20) complaints by its citizens of excessive force over a period of ten (10) years.

49. While Defendant CITY has a policy and/or procedure in place in reference to the use of handcuffs indicating, "When handcuffs are utilized, they will be placed on the subject as soon as the subject is under control. When possible handcuffs should be double locked behind a prisoner's back with the prisoner's palms turned outward to minimize the potential harm or escape," Defendant CITY failed to train Defendant CITY'S officers when placing handcuffs on citizens with palms outward and upward, could lead to serious harm.

50. The Defendant CITY also has no policies nor procedures in effect for its Law Enforcement officers to intervene when other of its Law Enforcement officers are using excessive force on a criminal suspect detained and/or arrested At all times alleged hereto, ETHERIDGE

8

was acting in a supervisory capacity on behalf of Defendant CITY.

51. Defendant CITY, by and through the City of the of St. Augustine police Department, owed a duty of care to members of the public, inclusive of the Plaintiff, to exercise reasonable care in hiring, retaining, and supervising its employees.

52. Defendant CITY's Law Enforcement officers took an oath indicating "as a Law Enforcement officer, my fundamental duty is to serve mankind, safeguard lives and property, to protect the innocent against deception, the weak against impression or intimidation, and peace against violence or disorder, and to respect the constitutional rights of all men to liberty, equality and justice". Defendant CITY's Law Enforcement officers also took an oath indicating "I will never act officiously or permit personal feelings, prejudices, animosities, or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force of violence and never accepting gratuities." During the time that Defendants CITY'S Officer ETHERIDGE was performing duties on behalf of the Defendant CITY in reference to the Plaintiff, pursuant to an employment evaluation, while the Defendant CITY knew that ETHERIDGE was "quick to lose patience with individuals who do not meet his level of expectations," and that characteristic was inconsistent with the oath taken by Defendant CITY's. officer of performing duties as a Law Enforcement officer, the Defendant CITY took no actions the further train nor discipline ETHERIDGE to address that issue. The Defendant CITY knew ETHERIDGE in performing duties as a Law Enforcement officer would have interactions with the public in confronting individuals who were accused of

9

crimes and would also have interactions with fellow officers in the position of a supervisor. An estimated none (9) weeks after the actions of ETHERIDGE directed at Plaintiff, Defendant CITY noted that ETHERIDGE had an issue using prescription medications for which ETHERIDGE was eventually terminated from employment. To Plaintiff's best information and belief, ETHERIDGE was abusing those medications at the time that ETHERIDGE performed those duties in reference to the Plaintiff and Defendant CITY knew or should have known that ETHERIDGE was not fit for duty and further action was necessary, and despite knowledge, failed to take actions to address that issue.

53. The actions and lack of actions of Defendant CITY amount to deliberate indifference to the use of force by its Law Enforcement officers against members of the public in violation of the 4th and 14th amendments to the United States Constitution.

54. As a result of Defendant CITY'S deliberate indifference, Plaintiff suffered a catastrophic injury to Plaintiff's right shoulder/rotator cuff and detached tendon requiring extensive surgery and ongoing rehabilitation, a permanent loss of function to Plaintiff's right shoulder, disc herniations and nerve damage in Plaintiff's neck and lower back, nerve damage in Plaintiff's right leg and foot, a neurological injury to Plaintiff's brain resulting in near total vision loss loss (legally blind) in Plaintiff's right eye resulting in a projected shortened lifespan, memory loss, nerve damage to Plaintiff's right wrist and resulting disability, tinnitus, severe pain, severe migraine headaches, erectile difficulties resulting from the shock, and mental anguish and suffering, all resulting in permanent disability, the need for extensive medical treatment, resulting in accrual of substantial medical bills, and significant loss of income. The losses are continuing.

55. Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against Defendant CITY, attorneys fees pursuant to 42 U.S.C. Section 1988, and trial by jury.

## COUNT II

### UNREASONABLE SEARCH AND SEIZURE
### CITY OF ST. AUGUSTINE 42 USC SECTION 1983 (single incident)

56. On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4285 US Highway 1 South, St. Augustine, Florida, 32086 with a cashier's check in hand in the amount of $100,000.

57. On that date Plaintiff was in a bank manager's office, sitting at a desk, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

58. Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

59. Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the Defendant CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force (strangling) and intimidation.

60. As a result of those allegations by M.M., Defendant CITY, by and through ETHERIDGE, COLLINS and OCHKIE, and other of the Defendant CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

61. The bank officer had previously left the office. The Plaintiff was sitting at the desk alone

11

with no other bank employees in the office.

62. Without provocation or resistance from the Plaintiff, ETHERIDGE directed Plaintiff to "hit the floor."

63. In response, the Plaintiff began to move towards the floor.

64. Without provocation or resistance from the Plaintiff, ETHERIDGE grabbed the back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

65. With the assistance of COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

66. COLLINS placed his knee on the left side of Plaintiff's neck.

67. ETHERIDGE placed a handcuff on Plaintiff's left arm.

68. With his knee on Plaintiff's lower back, and with COLLINS' knee on the left side of Plaintiff's neck, ETHERIDGE forcefully wrenched Plaintiff's right arm upward towards Plaintiff's shoulders in the middle of Plaintiff's head attempting to place a handcuff on the Plaintiff.

69. Thee was a loud pop in Plaintiff's right shoulder and neck and Plaintiff felt immediate pain.

70. ETHERIDGE noted Plaintiffniff's right arm and shoulder were loose satting "huh". .

71. Plaintiff went into shock, was shaking, and had trouble breathing.

72. Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from Defendat CITY by and through ETHERIDGE, COLLINS, and OCHKIE, SHERIFF and other Law Enforcement officers

73. There was no response nor assistance.

74. ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist. .

75. Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

76. COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

77. Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from Defendant CITY by and through ETHERIDGE, COLLINS, and OCHKIE, SHERIFF and other Law Enforcement officers.

78. There again was no response nor assistance.

79. While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

80. While Plaintiff was in pain and shock, sweating and shaking, and having trouble breathing, Defendant CITY, by and through ETHERIDGE and COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

81. Plaintiff again yelled out from immediate extreme pain.

13

82. Plaintiff again requested medical assistance.

83. The request for medical assistance from Plaintiff was again ignored by Defendant CITY, by and through ETHERIDGE, COLLINS and OCHKIE, SHERIFF and other Law Enforcement officers present. .

84. After being picked up, Plaintiff's hands, and arms and wrists then moved downward.

85. At all times alleged hereto, Defendant CITY, by and through OCHKIE, was aware of these actions, failed to protect Plaintiff from harm, failed to intervene, failed to obtain medical assistance, and ratified the aforementioned conduct.

86. At no time whicle being restrained and handcuffed did the Plaintiff offer any resistence, provide reason to be believe Plaintiff wold resist and Plaintiff complied with any and commands of Law Enforcement.

87. From the time that ETHERIDGE came into the bank office, ETHERIDGE was shaking. At some point COLLINS asked ETHERIDGE if he wanted COLLINS to take over. ETHERIDGE said "No."

88. Defendant CITY, by and through Defendant CITY'S POLICE and Law Enforcement officers, was aware Defendant CITY'S Law Enforcement officers would come in contact with various citizens who were accused of various violations of the law, and it would be necessary to place handcuffs on those citizens to detain and/or arrest them when either resisting or not resisting.

89. Defendant CITY was aware that it was necessary to properly train Defendant CITY'S Law Enforcement officers in how to place handcuffs on those citizens minimizing harm.

90. Defendant CITY failed to train Defendant CITY'S Law Enforcement officers in the proper

placement of handcuffs on individuals who were criminal suspects who were not resisting and who offered no threat to Defendant CITY'S Law Enforcement officers.

91. While Defendant CITY had policies and procedures in place for placing handcuffs on individuals who were detained and/or arrested by Defendant CITY'S's Law Enforcement officers,  while Plaintiff was not resisting nor any threat to Defendant CITY'S Law Enforcement officers, Defendant CITY's Law Enforcement officers, acting in conjunction while on Plaintiff's person, forecefully wrenched Plaintiff's arm and/or arms in the direction of the Plaintiff's head with palms facing upward and outward attempting to place handcuffs on the Plaintiff, and then causing the Plaintiff's hands and wrists to move downward, and subsequently pulling the Plaintiff up from the floor by Plaintiff's arms and hands which were handcuffed.

92. It is patently obvious from this single incident that the Defendant CITY failed to train Defendant CITY'S Law Enforcement officers on the proper placement of handcuffs on suspects who were not resisting nor a threat.and failure to train would likely to result in a violation of a detainee's or arrestee's constitutional rights.

93. The actions of the Defendant CITY, by and through Defendant CITY'S Law Enforcement officers ETHERIDGE, COLLINS and OCHKIE rose to the level of a single incident of deliberate indifference of failure to train in violation of Plaintiff's right to be free from excessive forec ad unreasonable search and seizure pursuant to the 4th and 14th amendments to the United Sates Constitution.

94. As a result of Defendant CITY'S deliberate indifference, Plaintiff suffered a catastrophic injury to Plaintiff's right shoulder/rotator cuff and detached tendon requiring extensive

15

surgery and ongoing rehabilitation, a permanent loss of function to Plaintiff's right shoulder, disc herniations and nerve damage in Plaintiff's neck and lower back, nerve damage in Plaintiff's leg and foot, a neurological injury to Plaintiff's brain resulting in loss of eyesight resulting in a projected shortened -lifespan, memory loss, injury to Plaintiff's wrists and resulting disability, tinnitus, severe pain, severe migraine headaches, erectile difficulties resulting from the shock, and mental anguish and suffering, all resulting in permanent disability, the need for extensive medical treatment, resulting in accrual of substantial medical bills, and significant loss of income. The losses are continuing.

95. Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against Defendat CITY, attorney's fees pursuant to 42 U.S.C. Section 1988, and trial by jury.

### COUNT III

### UNREASONABLE SEARCH AND SEIZURE/EXCESSUIVE FORCE AS TO DEFENDANT ETHERIDGE INDIVIDUALLY UNDER COLOR OF LAW 42 USC Section 1983

96. On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at   4285 US Highway 1 South, St. Augustine, Florida, 32086,   with a cashier's check in hand in the amount of $100,000.

97. On that date Plaintiff was in a bank manager's office, sitting at a desk, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

98. Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

16

99. Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the Defendant CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force (strangling) and intimidation.

100.    As a result of those allegations by M.M., the CITY, by and through Defendant ETHERIDGE, COLLINS and OCHKIE, and other of the Defendant CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

101.    The bank officer previously left the office. The Plaintiff was sitting in the office alone with no other bank employees.

102.    Without provocation or resistance from the Plaintiff, Defendant ETHERIDGE directed Plaintiff to "hit the floor."

103.    In response, the Plaintiff began to move towards the floor.

104.    Without provocation or resistance from the Plaintiff, Defendant ETHERIDGE grabbed the back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

105.    With the assistance of COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

106.    COLLINS placed his knee on the left side of Plaintiff's neck.

107.    Defendant ETHERIDGE placed a handcuff on Plaintiff's left arm.

108.    With his knee on Plaintiff's lower back, and with COLLINS' knee on the left side of Plaintiff's neck, Defendant ETHERIDGE wrenched Plaintiff's right arm upweard towards Plaintiff's shoulders and the middle of Plaintiff's head attempting to place a handcuff on the Plaintiff.

17

109. There was a loud pop in Plaintiff's right shoulder and neck and Plaintiff felt immediate pain.Plaintiff went into shock, was shaking, and had trouble breathing.

110. Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from Defendat CITY by and through Defendant ETHERIDGE, COLLINS, and OCHKIE, SHERIFF and other Law Enforcement officers

111. There was no response nor assistance.

112. Defendant ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist.

113. Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

114. COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

115. Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from the CITY, by ad through Defendant ETHERIDGE, COLLINS , and OCHKIE, SHERIFF and other Law Enforcement officers.

116. There again was no response nor assistance.

117. While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

118. While Plaintiff was in pain and shock, sweating and shaking, and having trouble breathing, the CITY, by and through Defendant ETHERIDGE and COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

119. Plaintiff again yelled out from immediate extreme pain.

120.    Plaintiff again requested medical assistance.

121.    The request for medical assistance from Plaintiff was again ignored by the CITY, by and through Defendant ETHERIDGE, COLLINS and OCHKIE, SHERIFF and other Law Enforcement officers present.

122.    After being picked up, Plaintiff's hands and arms and wrists then moved downward.

123.    At all times alleged hereto, the CITY, by and through OCHKIE, was aware of these actions, failed to protect Plaintiff from harm, failed to intervene, and failed to obtain medical assistance.

124.    At no time whicle being restrained and handcuffed did the Plaintiff offer any resistence, provide reason to be believe Plaintiff would resist and Plaintiff complied with any and commands of Law Enforcement.

125.    From the time that ETHERIDGE entered the bank office, ETHERIDGE was shaking. COLLINS offered to take over to which ETHERIDGE stated "No."

126.    During the time Plaintiff was restrained and handcuffs were placed on the Plaintiff, Plaintiff had a clearly established constitutional right pursuant to the 4th and 14th amendments to the United States Constitution to be free from excessive force and unreasonable search and seizure, 42 U.S.C. Section 1983.

127.    Defendant ETHERIDGE was on notice or should have been on notice that the use of force in restraining an individual and in the use of handcuffs must be reasonably proportionate to the need for that force and when applying force to an individual who is not resisting, should not be applied with undue severity to an obedient detainee/arrestee when restraining an individual such as Plaintiff, who was offering no resistance, and failure

19

to do so would be a violation of an individual's constitutional rights.

128.    Defendant ETHERIDGE'S actions in restraining Plaintiff, the manner in which the Plaintiff was restrained on the floor, in moving Plaintiff's hands and wrists to Plaintiff's head with palms turned outward, in causing Plaintiff's arms to move downward towards Plaintiff's back with palms turned outward, and in pulling Plaintiff up from the floor by Plaintiff's and applying handcuffs in an excessively tight position were in violation of Plaintiff's constitutional right to be free from excessive force, 42 U.S.C. Section 1983.

129.    As a result of Defendant ETHERIDGE'S actions,. Plaintiff suffered a catastrophic injury to Plaintiff's right shoulder/rotator cuff and detached tendon requiring extensive surgery and ongoing rehabilitation, a permanent loss of function to Plaintiff's right shoulder, severe spinal injuries to Plaintiff's neck and lower back, injury to Plaintiff's leg and foot, memory loss, nerve damage to Plaintiff's right arm and wrist, loss of sight resulting in a projected shortened lifespan, severe pain, erectile dysfunction and mental anguish and suffering, all resulting in permanent disability, accrual of substantial medical bills, and significant loss of income. The losses are continuing.

130.    Defendant ETHERIDGE'S actions were willful and intentional.

131.    Plaintiff has retained the undersigned counsel to represent Plaintiff in this matter and agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against Defendant ETHERIDGE individually under color of law, punitive damages based upon Defendant's willful and intentional acts,   attorney's fees pursuant to 42 U.S.C. Section 1988, and trial by jury.

## COUNT IV

### UNREASONABLE SEARCH AND SEIZURE AS TO DEFENDANT COLLINS INDIVIDUALLY UNDER COLOR\ OF LAW 42 USC SECTION 1983

132.     On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4285 US Highway 1 South, St. Augustine, Florida, 32086, with a cashier's check in hand in the amount of $100,000.

133.     On that date Plaintiff was in a bank manager's office, sitting at a desk,   for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

134.     Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

135.     Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the Defendant CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force (strangling) and intimidation.

136.     As a result of those allegations by M.M., Defendant CITY, by and through ETHERIDGE, Defendant COLLINS and OCHKIE, and other of the Defendant CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

137.     The bank officer had previously left the office. The Plaintiff was sitting in the office alone with no other bank employees present.

138.     Without provocation or resistance from the Plaintiff, ETHERIDGE directed

Plaintiff to "hit the floor."

139. In response, the Plaintiff began to move towards the floor.

140. Without provocation or resistance from the Plaintiff, ETHERIDGE grabbed the back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

141. With the assistance of Defendant COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

142. Defendant COLLINS placed what Plaintiff believes to br his knee on the left side of Plaintiff's neck.

143. ETHERIDGE placed a handcuff on Plaintiff's left arm.

144. With his knee on Plaintiff's lower back, and with COLLINS' knee on the left side of Plaintiff's neck, ETHERIDGE forcefully wrenched Plaintiff's right arm upweard towards Plaintiff's shoulders and head attempting to place handcuff on the Plaintiff.

145. Thee was a loud pop in Plaintiff's right shoulder and neck and Plaintiff felt immediate pain.

146. Plaintiff went into shock, was shaking, and had trouble breathing.

147. Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from Defendat CITY by ad through ETHERIDGE, Defendant COLLINS, and OCHKIE, SHERIFF and other Law Enforcement officers

148. There was no response nor assistance.

149. ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist. .

150. Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

22

151.    Defendant COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

152.    Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from Defendant CITY by ad through ETHERIDGE, Defendant COLLINS , and OCHKIE, SHERIFF and other Law Enforcement officers.

153.    There again was no response nor assistance.

154.    While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

155.    While Plaintiff was in pain and shock, sweating and shaking, and having trouble breathing, Defendant CITY, by and through ETHERIDGE and Defendant COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

156.    Plaintiff again yelled out from immediate extreme pain.

157.    Plaintiff again requested medical assistance.

158.    The request for medical assistance from Plaintiff was again ignored by Defendant CITY, by and through ETHERIDGE, Defendant COLLINS and OCHKIE, SHERIFF and other Law Enforcement officers present.

159.    After being picked up, Plaintiff's hands, arms and wrists then moved downward.

160.    At all times alleged hereto, the CITY, by and through OCHKIE, was aware of these actions, failed to protect Plaintiff from harm, failed to intervene, failed to obtain medical assistance, and ratified the aforementioned conduct.

161.    At no time whicle being restrained and handcuffed did the Plaintiff offer any resistence, provide reason to be believe Plaintiff wold resist and Plaintiff complied with

any and commands of Law Enforcement.

162.    From the time that ETHERIDGE entered the bank office, ETHERIDGE was shaking Deefndant COLLINS asked ETHERIDGE if he wanted COLLINS to take over to which ETHERIDGE said no.

163.    At all times alleged hereto, Plaintiff had a clearly established constitutional right pursuant to the 4th and 14th amendments to the United States Constitution to be free from excessive force and unreasonable search and seizure when being detained and/or arrested and in the placement of handcuffs and through by Law Enforcement.

164.    Defendant COLLINS was on notice or should have been on notice that the use of force in restraining an individual and in the use of handcuffs must be reasonably proportionate to the need for that force, and when applying force to an individual who is not resisting, should not be applied with undue severity to an obedient detainee/arrestee when restraining an individual, who is offering no resistance, and failure to do so would be a violation of an individual's constitutional rights.

165.    Defendant COLLINS was also on notice that Defendant COLLINS had a duty to intervene upon observing the actions of another Law Enforcement officer violating those constitutional rights.

166.    Defendant COLLINS' actions in physically restraining the Plaintiff face down when offering no resistance, in assisting in the placement of handcuffs on the Plaintiff, in failing to intervene when assisting in and observing the actions of ETHERIDGE, in restraining and handcuffing the Plaintiff, and in assisting in removing Plaintiff from the floor while handcuffed, were in violation of Plaintiff's constitutional right to be free from

24

excessive force.

167.    As a result of Defendant COLLINS' actions and failure to act, Plaintiff suffered a catastrophic injury to Plaintiff's right shoulder/rotator cuff and detached tendon requiring extensive surgery and ongoing rehabilitation, a permanent loss of function to Plaintiff's right shoulder, severe spinal injuries to Plaintiff's neck and lower back, injury to Plaintiff's leg and foot, memory loss, nerve damage to Plaintiff's right arm and wrist, loss of sight resulting in a projected shortened lifespan, severe pain, erectile dysfunction, and mental anguish and suffering, all resulting in permanent disability, accrual of substantial medical bills, and significant loss of income. The losses are continuing.

168.    Defendant COLLINS' actions were willful and intentional.

169.    Plaintiff has retained the undersigned counsel to represent Plaintiff in this matter it agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against Defendant COLLINS, individually under color of law, punitive damages based upon Defendant's willful and intentional misconduct, reasonable attorney's fees pursuant to 42 U.S.C. Section 1988, and trial by jury.

## COUNT V

### UNREASONABLE SEARCH AND SEIZURE AS TO DEFENDANT OCHKIE INDIVIDUALLY UNDER COLOR OF LAW 42 USC Section 1983

170.    On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4285 US Highway 1 South, St. Augustine, Florida, 32086, with a cashier's check in hand in the amount of $100,000.

171.    On that date Plaintiff was in a bank manager's office, sitting at a desk, for the

25

purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

172.     Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

173.     Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the Defendant CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force (strangulation) and intimidation.

174.     As a result of those allegations by M.M., Defendant CITY, by and through ETHERIDGE, COLLINS and Defendant OCHKIE, and other of the Defendant CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

175.     The bank officer had previously left the office. The Plaintiff was sitting alone at the desk with no other bank employees present.

176.     Without provocation or resistance from the Plaintiff, ETHERIDGE directed Plaintiff to "hit the floor."

177.     In response, the Plaintiff began to move towards the floor.

178.     Without provocation or resistance from the Plaintiff, ETHERIDGE grabbed the back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

179.     With the assistance of COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

180.     COLLINS placed his knee on the left side of Plaintiff's neck.

181.     ETHERIDGE placed a handcuff on Plaintiff's left arm.

26

182.     With his knee on Plaintiff's lower back, and with COLLINS' knee on the left side of Plaintiff's neck, ETHERIDGE forcefully wrenched Plaintiff's right arm upward towards Plaintiff's shoulders and the middle of Plaintiff's head attempting to place a handcuff on the Plaintiff.

183.     There was a loud pop in Plaintiff's right shoulder and neck and Plaintiff felt immediate pain.

184.     Plaintiff went into shock, was shaking, and had trouble breathing.

185.     Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from the CITY by and through ETHERIDGE, COLLINS, and Defendant OCHKIE, SHERIFF and other Law Enforcement officers.

186.     There was no response nor assistance.

187.     ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist. .

188.     Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

189.     COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

190.     Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from Defendant CITY by and through ETHERIDGE, COLLINS, and Defendant OCHKIE, SHERIFF and other Law Enforcement officers.

191.     There again was no response nor assistance.

192.     While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

193.     While Plaintiff was in pain and shock, sweating and shaking, and having trouble

27

breathing, the CITY by and through ETHERIDGE and COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

194.    Plaintiff again yelled out from immediate extreme pain.

195.    Plaintiff again requested medical assistance.

196.    The request for medical assistance from Plaintiff was again ignored by Defendant CITY, by and through ETHERIDGE,   COLLINS and Defendant OCHKIE, SHERIFF and other Law Enforcement officers present. .

197.    After being picked up, Plaintiff's hands, and arms and wrists then moved downward.

198.    At all times alleged hereto, Defendant CITY, by and through Defendant OCHKIE, was aware of these actions, failed to protect Plaintiff from harm, failed to intervene, failed to obtain medical assistance, and ratified the aforementioned conduct.

199.    At no time whicle being restrained and handcuffed did the Plaintiff offer any resistance, provide reason to be believe Plaintiff would resist and Plaintiff complied with any and commands of Law Enforcement.

200.    From the time that ETHERIDGE entered the office, ETHERIDGE was shaking. COLLINS asked ETHERIDGE if ETHERIDGE wanted COLLINS to take over. ETHERIDGE stated "No."

201.    At all times alleged hereto, Plaintiff had a clearly established constitutional right pursuant to the 4th and 14th amendments to the United States Constitution to be free from excessive force and unreasonable search and seizure when being detained/arrested and

28

handcuffed by Law Enforcement.

202.    Defendant OCHKIE was on notice or should have been on notice that the use of force in restraining an individual and in seizing an individual and in the use of handcuffs must be reasonably proportionate to the need for that force. and when applying force to an individual who is not resisting, should not be applied with undue severity to an obedient detainee/arrestee, and failure to do so would be a violation of the individual's constitutional rights.

203.    Defendant OCHKIE, additionally knew or should have known that a Law Enforcement officer had a duty to intervene when observing another Law Enforcement officer and/or officers use of excessive force and failure to do so would be a violation of that citizen's constitutional right.

204.    Defendant OCHKIE's failure to intervene when observing the actions of ETHERIDGE and COLLINS when Plaintiff was being restrained face down when offering no resistance and in the use of handcuffs and removing Plaintiff from the floor were a violation of Plaintiff's constitutional right to be free from excessive force.

205.    As a result of Defendant OCHKIE'S actions and failure to act, Plaintiff suffered a catastrophic injury to Plaintiff's right shoulder/rotator cuff and detached tendon requiring extensive surgery and ongoing rehabilitation, a permanent loss of function to Plaintiff's right shoulder, severe spinal injuries to Plaintiff's neck and lower back, injury to Plaintiff's leg and foot, memory loss, nerve damage to Plaintiff's right arm and wrist, loss of sight resulting in a projcetd shortened lifespan, severe pain, erectile dysfunction, and mental anguish and suffering, all resulting in permanent disability, accrual of substantial medical

29

bills, and significant loss of income. The losses are continuing.

206.    Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and agreed to pay counsel reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against Defendant OCHKIE, attorney's fees pursuant to 42 U.S.C. Section 1988, and trial by jury.

## COUNT VI

## BATTERY AS TO CITY

207.    On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4285 US Highway 1 South, St. Augustine, Florida, 32086, with a cashier's check in hand in the amount of $100,000.

208.    On that date Plaintiff was in a bank manager's office, sitting at a desk, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

209.    Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

210.    Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the Defendant CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force (attempting to strangle) and intimidation.

211.    As a result of those allegations by M.M., Defendant CITY, by and through ETHERIDGE, COLLINS and OCHKIE, and other of the Defendant CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

30

212.    The bank officer had previously left the office. The Plaintiff was sitting at the desk with no other bank employees in the office.

213.    Without provocation or resistance from the Plaintiff, ETHERIDGE directed Plaintiff to "hit the floor".

214.    In response, the Plaintiff began to move towards the floor.

215.    Without provocation or resistance from the Plaintiff, ETHERIDGE grabbed the back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

216.    With the assistance of COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

217.    COLLINS placed his knee on the left side of Plaintiff's neck.

218.    ETHERIDGE placed a handcuff on Plaintiff's left arm.

219.    With his knee on Plaintiff's lower back, and with COLLINS' knee on the left side of Plaintiff's neck, ETHERIDGE forcefully  wrenched Plaintiff's right arm upweard towards Plaintiff's shoulders and the middle of Plaintiff's head attempting to place handcuff on the Plaintiff.

31

220.    Thee was a loud pop in Plaintiff's right shoulder and neck and Plaintiff felt immediate pain.

221.    Plaintiff went into shock, was shaking, and had trouble breathing.

222.    Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from Defendat CITY by and through ETHERIDGE, COLLINS, and OCHKIE, SHERIFF and other Law Enforcement officers

223.    There was no response nor assistance.

224.    ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist. .

225.    The handcuffs were too tight and Plaintiff was in pain.

226.    COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

227.    Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from Defendant CITY by ad through ETHERIDGE, COLLINS , and OCHKIE, SHERIFF and other Law Enforcement officers.

228.    There again was no response nor assistance.

229.    While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

230.    While Plaintiff was in pain and shock, sweating and shaking, and having trouble breathing, Defendant CITY, by and through ETHERIDGE and COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

231.    Plaintiff again yelled out from immediate extreme pain.

32

232.    Plaintiff again requested medical assistance.

233.    The request for medical assistance from Plaintiff was again ignored by Defendant CITY, by and through ETHERIDGE,   COLLINS and OCHKIE, SHERIFF and other Law Enforcement officers present. .

234.    After being picked up, Plaintiff's hands, and arms and wrists then moved downward.

235.    At no time while being restrained and handcuffed did the Plaintiff offer any resistence, provide reason to be believe Plaintiff wold resist and Plaintiff complied with any and all commands of Law Enforcement.

236.    The actions of Defendant CITY, by and through ETHERIDGE'S and COLLINS in restraining Plaintiff, the manner in which the Plaintiff was restrained on the floor, in moving Plaintiff's hands and wrists to Plaintiff's head with palms turned outward, in causing Plaintiff's arms to move downward towards Plaintiff's back with palms turned outward, and in pulling Plaintiff up from the floor by Plaintiff's and applying handcuffs in an excessively tight position were offensive to the Plaintiff and without the Plaintiff's consent. .

237.    As a result Plaintiff suffered a catastrophic injury to Plaintiff's right shoulder/ rotator cuff and detached tendon requiring extensive surgery and ongoing rehabilitation, a permanent loss of function to Plaintiff's right shoulder, severe spinal injuries to Plaintiff's neck and lower back, injury to Plaintiff's leg and foot, memory loss, nerve damage to Plaintiff's right arm and wrist, loss of sight resulting in a projected shortened llifespan, severe pain, erectile dysfuction, and mental anguish and suffering, all resulting in

permanent disability, accrual of substantial medical bills, and significant loss of income. The losses are continuing.

238.	On or about July 8, 2019, Plaintiff filed a Notice of Intent to Sue pursuant to Chapter 768 of the Florida Statutes with Defendant CITY and the Florida Department of Insurance and has exhausted any and all admistarive remedies herein.

WHEREFORE Plaintiff demands judgment for damages against Defendant CITY and trial by jury.

## NEGLIGENCE SHERIFF

239.	On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4285 US Highway 1 South, St. Augustine, Florida, 32086,   with a cashier's check in hand in the amount of $100,000.

240.	On that date Plaintiff was in a bank manager's office, sitting at a desk, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

241.	Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

242.	Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the Defendant CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force (strangling) and intimidation.

243.	As a result of those allegations by M.M., Defendant CITY, by and through ETHERIDGE, COLLINS and OCHKIE, and other of the Defendant CITY'S officers, with assistance from Defendant SHERIFF, entered the bank manager's office, surrounded the

Plaintiff and pointed firearms at the Plaintiff.

244. The bank officer had previously left the office. The Plaintiff was sitting in the office with no bank employees present.

245. Without provocation or resistance from the Plaintiff, ETHERIDGE directed Plaintiff to "hit the floor".

246. In response, the Plaintiff began to move towards the floor.

247. Without provocation or resistance from the Plaintiff, ETHERIDGE grabbed the back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

248. With the assistance of COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

249. COLLINS placed his knee on the left side of Plaintiff's neck.

250. ETHERIDGE placed a handcuff on Plaintiff's left arm.

251. With his knee on Plaintiff's lower back, and with COLLINS' knee on the left side of Plaintiff's neck, ETHERIDGE forcefully wrenched Plaintiff's right arm upweard towards Plaintiff's shoulders and to the middle of Plaintiff's head attempting to place handcuff on the Plaintiff.

252. There was a loud pop in Plaintiff's right shoulder and neck and Plaintiff felt immediate pain.

253. Plaintiff went into shock, was shaking, and had trouble breathing.

254. Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from Defendat CITY by ad through ETHERIDGE, COLLINS, and OCHKIE, Defendant SHERIFF and other Law Enforcement officers

255. There was no response nor assistance.

256. ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist. .

257. Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

258. COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

259. Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from the CITY by ad through ETHERIDGE, COLLINS , and OCHKIE, Defendant SHERIFF and other Law Enforcement officers.

260. There again was no response nor assistance.

261. While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

262. While Plaintiff was in pain and shock, sweating and shaking, and having trouble breathing, Defendant CITY, by and through ETHERIDGE and COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

263. Plaintiff again yelled out from immediate extreme pain.

264.    Plaintiff again requested medical assistance.

265.    The request for medical assistance from Plaintiff was again ignored by Defendant CITY, by and through ETHERIDGE, COLLINS and OCHKIE, Defendant SHERIFF and other Law Enforcement officers present. .

266.    After being picked up, Plaintiff's hands, and arms and wrists then moved downward.

267.    At all times alleged hereto, the CITY, by and through OCHKIE, was aware of these actions, failed to protect Plaintiff from harm, failed to intervene, failed to obtain medical assistance, and ratified the aforementioned conduct.

268.    At no time while being restrained and handcuffed did the Plaintiff offer any resistence, provide reason to be believe Plaintiff would resist and Plaintiff complied with any and commands of Law Enforcement.

269.    At all times alleged hereto Defendant SHERIFF was, by and through Defendant SHERIFF'S deputies, was aware of these actions and failed to proceed to protect the Plaintiff from harm, failed to intervene, and failed to obtain medical assistance

270.    At all times alleged hereto Defendant SHERIFF by and through Defendant's deputies was on notice or should have been on notice that the use of force in restraining an individual in the use of handcuffs must be reasonably proportionate to the need for that force, and when applying that force to an individual who is not resisting, should not be applied with undue severity to an obedient detainee/arrestee when restraining an individual such as the Plaintiff, who was offering no resistance, and failure to do so would be a violation of an individual citizens constitutional rights.

271.    Defendant SHERIFF, knew or should have known that Defendant SHERIFF had a duty, by and through Defendant's deputies, to intervene when observing other Law Enforcement officers in the use of excessive force when arresting/detaining a citizen and in the placement of handcuffs and the duty to provide medical treatment.

272.    Further, Defendant SHERIFF knew or should have known that Defendant had a duty when a detainee/arrestee suffered a serious injury, to provide medical assistance.

273.    Defendant SHERIFF, by and through Defendant's deputies, was in close proximity to ETHERIDGE and COLLINS and Plaintiff, an estimated 2 to 3 feet, when Plaintiff was forced to the floor, handcuffs were placed on the Plaintiff, Plaintiff was picked up from the floor, and Plaintiff was complaining of pain and requesting medical assistance

274.    Based upon Defendant SHERIFF'S proximity, Defendant had the ability to intervene and stop the actions of ETHERIDGE and COLLINS .

275.    Defendant SHERIFF additionally had the ability to assist the Plaintiff with medical care .

276.    The Defendant SHERIFF breached that duty by failing to intervene when observing the actions of ETHERIDGE and COLLINS in forcing the Plaintiff to the floor face down, and physically restraining the Plaintiff, in the placement of handcuffs on the Plaintiff , and in picking Plaintiff up from the floor.

277.    Defendant SHERIFF additionally breached that duty by failing to provide medical care to the Plaintiff.

278.    But for Defendant's failure to intervene and provide medical care, Plaintiff would not have been injured.

279.    As a result Plaintiff suffered a catastrophic injury to Plaintiff's right shoulder/rotator cuff and detached tendon requiring extensive surgery and ongoing rehabilitation, a permanent loss of function to Plaintiff's right shoulder, severe spinal injuries to Plaintiff's neck and lower back, injury to Plaintiff's leg and foot, memory loss, nerve damage to Plaintiff's right arm and wrist, loss of sight resulting in a projected shortened lifespan, severe pain, erectile dysfunction, and mental anguish and suffering, all resulting in permanent disability, accrual of substantial medical bills, and significant loss of income. The losses are continuing.

280.    On or about July 8, 2019, the Plaintiff filed served a Notice of Intent to sue with the Defendant SHERIFF along with the State of Florida, Department of Insurance and has exhausted any and all administrative remedies pursuant to chapter 768 of the Florida Statutes..

WHEREFORE Plaintiff demands judgment for damages against Defendant SHERIFF and trial by jury.

## NEGLIGENCE CITY

281.    On or about June 29, 2018, Plaintiff was at a bank inquiring as to the status of a check received by the Plaintiff as a result of Plaintiff's sale of Plaintiff's sailboat.

282.    Unbeknownst to the Plaintiff, the individual who purchased that sailboat falsely indicated to the bank and Defendant CITY that Plaintiff had obtained that check by physical force (strangling) and intimidation.

283.    Defendant CITY's Law Enforcement officers entered the bank office along with SHERIFF'S deputies pointing firearms at the Plaintiff.

39

284.    Plaintiff was physically restrained by Defendant CITY'S officers causing serious physical injury to the Plaintiff's right shoulder, neck, lower back, right wrist, elbows and brain.

285.    As a result Plaintiff was in severe pain, was physically shaking, had difficulty breathing, was dizzy, stumbling, disoriented and was in shock

286.    Plaintiff was pale white.

287.    No medical attention was provided to the Plaintiff.

288.    The Plaintiff was brought outside the bank by Defendant CITY'S offocers.

289.    The Defendant CITY by and through ETHERIDGE and COLLINS, brought M.M. to Plaintiff to identify Plaintiff.

290.    It was necessary for ETHERIDGE to hold Plaintiff up due to Plaintiff's smedical condition.

291.    Defendant CITY, by and through Defendant's Law Enforcement offcers, while Plaintiff was in pain, dizzy and disoriented, and with handcuffs behind Plaintiff's back, placed Plaintiff in a SHERIFF'S vehicle with functional air conditioning.

292.    Plaintiff was later moved by Defendant CITY, by whom Plaintiff believes to be ETHERIDGE, to Defendant CITY's Law Enforcement vehicle.

293.    The Plaintiff was then placed by Defendant in the rear right passenger seat of Defendat CITY'S Law Enforcement vehicle while Plaintiff continued to be in pain, dizzy, and disoriented.

294.    At that time, Plaintiff had suffered a catastrophic injury to the Plaintiff's right shoulder/rotator cuff and detached tendon, spinal injuries to Plaintiff's neck and lower

back, injury to Plaintiff's leg and foot, nerve damage to Plaintiff's right arm and wrist, and a brain injury as a result of the prior actions and lack of actions of Defendant CITY'S officers and the SHERIFF while in the bank .

295.  Defendant CITY'S Law Enforcement officer was in the driver's seat of that vehicle.

296.  The vehicle was running, the air-conditioning was non-functioning, and the windows were completely rolled up with the fan motor running.

297.  Plaintiff complained to Defendant's Law Enforcement officer that it was too hot.

298.  Defendant CITY'S Law Enforcement officer agreed the vehicle was too hot, stated the air-conditioning was non-functioning, exited the vehicle, and closed the door.

299.  The Plaintiff remained alone in that vehicle in the back seat with handcuffs behind Plaintiff's back while the windows continued to be completely rolled up.

300.  The temperature was was an estimated 85°F outside.

301.  The temperature inside of the vehicle increased to over 120° F.

302.  Immediately on the sidewalk in front of the vehicle were Defendant CITY, by and through ETHERIDGE, COLLINS, OCHKIE , Defendants CITY'S driver (name unknown), and SHERIFF'S deputies observing the Plaintiff.

303.  Plaintiff became dizzy and had difficulty talking.

304.  While in the back seat and in handcuffs, Plaintiff moved Plaintiff's head back and forth and moved Plainiff's lips to obtain assistance from Defendant CITY, by and through ETHERIDGE, COLLINS, OCHKIE, Defendant CITY'S driver, amd SHERIFF'S deputies, who were observing the Plaintiff.

41

305.    The Defendant CITY, ETHERIDGE, COLLINS, OCHKIE, Defendant CITY'S Driver and SHERIFF'S deputies were aware the vehicle had non-functioning air conditioning and was running with the windows rolled up with the fan running.

306.    No efforts were made to assist the Plaintiff, to remove the Plaintiff from the vehicle, to roll down the windows, nor take any other actions to assist the Plaintiff.

307.    After an estimated 10 minutes of being in the vehicle, the Plaintiff physically passed out falling over onto the seat hitting the Plaintiff's head.

308.    To Plaintiff's best informationa and belief, the temperature inside the vehicvle contined to over 120 degrees F.

309.    No efforts again were made to assist the Plaintiff, that being remove the Plaintiff from the vehicle, roll down the windows, loosen the handcuffs, provide Plaintiff with any water, nor provide any medical attention.

310.    Defendant CITY'S Law Enforcement /driver entered the vehicle and proceeded to drive the Plaintiff to Defendant CITY'S POLICE station.

311.    Enroute to the station, the Plaintiff briefly regained consciousness.

312.    Upon briefly regaining consciousness, Plaintiff again requested medical assistance, inclusive of asking that Defendant CITY's Law Enforcement officer/driver take Plaintiff to the local hospital while the vehicle was driving by.

313.    Plaintiff's was told to "sit back and relax" as Plaintiff was being brought to the POLICE.

314.    To Plaintiff's best information and belief, Plaintiff again lost consciousness and did not regain consciousness until arriving at defendant CITY'S POLICE station at which time,

to Plaintiff's best information and belief, Defendant CITY made efforts to revive Plaintiff through the use of smelling salts.

315. To Plaintiff's best information and belief, Plaintiff was in Defendant CITY'S Law Enforcement vehicle for an estimated 45 minutes.

316. Handcuffs remained behind Plaintiff's back the entire time.

317. During the time that the Plaintiff was detained by Defendant CITY in Defendant CITY's vehicle, by and through Defendant CITY'S officers, Defendant CITY had a duty of reasonable care towards the Plaintiff to ensure the Plaintiff's safety.

318. Further, Defendant CITY, by and through Defendant's officers, knew or should have known that failure to treat a serious medical condition would be considered deliberate indifference to that medical condition in violation of an individual's constitutional right to be free from excessive force and unreasonable search and seizure.

319. Defendant CITY breached that duty by placing the Plaintiff and continuing to place the Plaintiff in a vehicle which was unsafe, when Plaintiff was suffering from physical injury, and in failing to obtain medical treatment for the Plaintiff.

320. As a result, the Plaintiff suffered a stroke, and neurological damage to Plaintiff's brain, resulting in permanent legal blindness with a projected shortened lifespan, pain and suffering, tinnitus, migraine headaches, memory loss, mental anguish, extensive medical treatment, accrual of medical bills, loss of the ability to work, and loss of income.

321. Plaintiff will continue to suffer those damages in the future.

322. But for Defendant CITY'S breach of Defendant's duty, Plaintiff would not have suffered those damages for and losses.

43

323.    On or about July 9, 2019, Palitiff filed a Notice of Intent to Sue with Defendant CITY and the State of Florida Department of Insurance pursunt to Chapter 768 of the Florida Statutes and has exhausted any all admisntraive remedies herein.

WHEREFORE Plaintiff demands judgment for damages against Defendat CITY and trial by jury.

## COUNT VII

## **NEGLIGENCE SHERIFF**

324.    On or about June 29, 2018, Plaintiff was at a bank inquiring as to the status of a check received by the Plaintiff as a result of Plaintiff's sale of Plaintiff's sailboat.

325.    Unbeknownst to the Plaintiff, the individual who purchased that sailboat falsely indicated to the bank and the CITY that Plaintiff had obtained that check by physical force (strangulation) and intimidation.

326.    The CITY's Law Enforcement officers entered the bank along with Defendant SHERIFF'S deputies pointing firearms at the Plaintiff.

327.    Plaintiff was physically restrained by the CITY'S officers causing serious physical injury to the Plaintiff's right shoulder, neck, lower back, right wrist, elbows and brain.

328.    As a result Plaintiff was in severe pain, was physically shaking, had difficulty breathing, was dizzy, stumbling, disoriented and was in shock

329.    Plaintiff was pale white.

330.    No medical attention was provided to the Plaintiff.

331.    The CITY by and through ETHERIDGE and COLLINS, brought M.M. to Plaintiff to identify Plaintiff.

44

332. The plaintiff had initially been brought to the Defendant SHERIFF'S Law Enforcement vehicle where there was functioning air-conditioning.

333. The CITY, by and through Defendant's Law Enforcement being dizzy and disoriented, and with handcuffs behind Plaintiff's back, moved the Plaintiff, by whom Plaintiff believes to be ETHERIDGE, to the CITY's Law Enforcement vehicle.

334. The plaintiff at that time had suffered a catastrophic injury to plaintiff's right shoulder/rotator cuff and detached tendon, spinal injuries to plaintiff's neck and lower back, injury to plaintiff's leg and foot, nerve lost the Plaintiff's right arm and wrist, as well as a brain injury as a result of the actions of the CITY while Plaintiff was handcuffed and restrained in the bank, and the failure to intervene of the Defendant SHERIFF.

335. The Plaintiff was then placed by the CITY in the rear right passenger sea of the CITY'S Law Enforcement vehicle.

336. The CITY'S Law Enforcement officer (name unknown) was in the driver's seat of that vehicle.

337. The vehicle was running, the air-conditioning was non-functioning, and the windows were completely rolled up with the fan running.

338. Plaintiff complained to the CITY'S Law Enforcement officer that it was too hot.

339. The CITY'S Law Enforcement officer agreed the vehicle was too hot, stated the air-conditioning was non-functioning, exited the vehicle, and closed the door.

340. The Plaintiff remained in that vehicle in the back seat with handcuffs behind Plaintiff's back while the windows continued to be completely rolled up.

341. The temperature was was an estimated 85°F outside.

342.    The temperature inside of the vehicle increased to over 120° F.

343.    Immediately on the sidewalk in front of the car were the CITY, by and through ETHERIDGE, COLLINS, OCHKIE , the CITY'S driver, and Defendant SHERIFF'S deputies observing the Plaintiff.

344.    Plaintiff became dizzy and had difficulty talking.

345.    While in the back seat and in handcuffs, Plaintiff moved Plaintiff's head back and forth and moved Plainiff's lips to get the attention of the CITY, by and through ETHERIDGE, COLLINS, OCHKIE, the CITY'S driver, amd Defendant SHERIFF'S deputies, who were observing the Plaintiff.

346.    The CITY, ETHERIDGE, COLLINS, OCHKIE, the CITY'S Driver and Defendant SHERIFF'S deputies were aware the vehicle had non-functioning air conditioning and was running with the windowas rolld up with he fan running.

347.    No efforts were made to assist the Plaintiff, to remove the Plaintiff from the vehicle, to roll down the windows, nor take any other actions to assist the Plaintiff.

348.    After an estimated 10 minutes of being in the vehicle, the Plaintiff physically passed out falling over onto the seat hitting the Plaintiff's head.

349.    To Plaintiff's best informationa and belief, the temperature inside the vehicvle continued to over 120 degrees F.

350.    Again, no efforts were made to assist the Plaintiff, that being remove the Plaintiff from the vehicle, roll down the windows, loosen the handcuffs, provide Plaintiff with any water, nor provide any medical attention.

46

351.    The CITY'S law enfrocement /driver entered the vehicle and proceeded to drive the Plaintiff to the CITY'S POLICE station.

352.    Enroute to the station, the Plaintiff briefly regained consciousness.

353.    Upon briefly regaining consciousness, Plaintiff again requested medical assistance, inclusive of asking that the CITY'S law enfrocent officer/driver to take Plaintiff to the local hospital while the vehicle was driving by.

354.    Plaintiff's was told to "sit back and relax" as Plaintiff was being brought to the POLICE.

355.    To Plaintiff's best information and belief, Plaintiff again lost consciousness and did not regain consciousness until arriving at the CITY'S POLICE station at which time, to Plaintiff's best information and belief, the CITY made efforts to revive Plaintiff through the use of smelling salts.

356.    To Plaintiff's best information and belief, Plaintiff was in the CITY'S Law Enforcement vehicle for an estimated 45 minutes.

357.    Handcuffs remained behind Plaintiff's back the entire time.

358.    During the time that the Plaintiff was detained by the CITY in the CITY's vehicle, by and through the CITY'S officers, Defendant SHERIFF had a duty of reasonable care towards the Plaintiff to ensure the Plaintiff's safety and to provide medical asuatnce.

359.    Further, Defendant SHERIFF knew or should have known that Defendant had a duty to provide medical care to Plaintiff's serious medical condition and failure to do so would amount to deliberate indifference in violation of the Plaintiff's constitutional right to be free from unreasonable search and seizure.

47

360.    Defendant SHERIFF breached that duty by ontinuing to allow Plaintiff to be placed in the CITY'S vehicle which was unsafe and in failing to obtain medical treatment for the Plaintiff.

361.    As a result, the Plaintiff suffered a stroke, neurological damage to Plaintiff's brain, resulting in permanent legal blindness with a projected shortened lifespan, tinnitus, migraine headaches, memory loss, erectile dysfunction, pain and suffering, mental anguish, extensive medical treatment, accrual of medical bills, loss of the ability to work, and loss of income.

362.    Plaintiff will continue to suffer those damages in the future.

363.    But for Defendant SHERIFF'S breach of Defendant's duty, Plaintiff would not have suffered those damages for and losses.

364.    On or about July 9, 2019, Palitiff filed a Notice of Intent to Sue with Defendant SHERIFF and the State of Florida Department of Insurance pursunt to Chapter 768 of the Florida Statutes and has exhausted any all admisntraive remedies herein.

WHEREFORE Plaintiff demands judgment for damages against Defendant SHERIFF and trial by jury.


## COUNT VIII-VIOLATION OF DUE PROCES
## DEFENDANTS ETHERIDGE, COLLINS AND OCHKIE

365.    On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at. 4285 US Highway 1 South, St. Augustine, Florida, 32086, with a cashier's check in hand

48

in the amount of $100,000

366.    On that date, Plaintiff was at the bank, in a bank manager's office, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

367.    Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

368.    Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force (strangling) and intimidation.

369.    As a result of those allegations by M.M., the CITY, by and through Defendant ETHERIDGE, Defendant COLLINS and Defendant OCHKIE, and other of the CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

370.    The Plaintiff was physically restrained, handcuffs were placed on the Plaintiff, and the Plaintiff was subsequently transported by the CITY to the CITY'S police station

371.    During the time that the CITY was at the bank, by and through the Defendant ETHERIDGE, Defendant COLLINS and/or Defendant OCHKIE, took possession and retained the $100,000 check which Plaintiff had received in exchange for sale of Plaintiff's sailboat.

372.    While at the CITY's police station, the Plaintiff was subject to severe interrogation wherein the Plaintiff denied any wrongdoing.

373.    After the Plaintiff was interrogated and evidence reviewed, the Plaintiff was released.

374.    No formal charges were brought against the Plaintiff nor do any Law Enforcement agencies intend on filing formal criminal charges against the Plaintiff regarding this alleged incident.

375.    Without Plaintiff's consent or knowledge, the check in the amount of $100,000 which had been removed from Plaintiff's possession, was returned by Defendant ETHERIDGE, Defendant COLLINS and/or Defendant OCHKIE to "M.M".

376.    At all times alleged hereto, Plaintiff had a clear right to due process pursuant to the 5th and 14th amendments to the United States Constitution to not be deprived of personal property by Law Enforcement, such as a check/money order, without formal notice and opportunity to be heard.

377.    Defendant ETHERIDGE, Defendant OCHKIE and Defendant COLLINS, knew or should have known when removing an individual's property, such as a check/money order, the property cannot be retained by Law Enforcement nor can the property be delivered to a third party without allowing an individual the opportunity in a legal and/or other proceeding to be heard as to rightful ownership, and failure to do so would be a violation of an individual's constitutional right.

378.    Defendant ETHERIDGE, Defendant COLLINS and Defendant OCKKIE additionally knew or should have known that the State of Florida has a statute/law with clearly defined procedures in place for Law Enforcement to follow when removing items allegedly used in criminal activity., that being "contraband", and the detention of those items, and/or giving those items to a third party, and failing to follow those procedures, would be a violation of an individual's right to due process. See Florida Statute 932.701-

932.704.

379. Defendant ETHERIDGE, Defendant COLLINS and/or Defendant OCHKIE, in retaining that check/money order after removal from Plaintiff's person, and in returning that check to "M.M", failed to afford the Plaintiff notice and opportunity to be heard in violation of Plaintiff's constitutional right to due process.

380. As a result, Plaintiff suffered the loss of $100,000, the loss of use of that property, accrued interest, and related damages.

381. Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against Defendant ETHERIDGE, Defendabt COLLINS, and Defendant OCHKIE , attorneys fees pursuant to 42 U.S.C. Section 1988 and trial by jury.

## COUNT IX-VIOLATION OF DUE PROCESS
## DEFENDANT CITY OF ST. AUGUSTINE

382. On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4285 US Highway 1 South, St. Augustine, Florida, 32086, with a cashier's check in hand in the amount of $100,000.

383. On that date, Plaintiff was at the bank, in a bank manager's office, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

384. Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

385. Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and

Defendant CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force (strangulation) and intimidation.

386. As a result of those allegations by M.M., the Defendant CITY, by and through ETHERIDGE, COLLINS and OCHKIE, and other of the CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

387. The Plaintiff was physically restrained, handcuffs were placed on the Plaintiff, and the Plaintiff was subsequently transported by the CITY to the CITY'S police station

388. During the time the Defendant CITY was at the bank, by and through the ETHERIDGE,  COLLINS and OHKIE, Defendant CITY took possession and retained the $100,000 check which Plaintiff had received in exchange for sale of Plaintiff's sailboat.

389. While at Defendant CITY's police station, the Plaintiff was subject to severe interrogation wherein the Plaintiff denied any wrongdoing.

390. After Plaintifffiff was interrogated and evidence was reviewed, Plaintiff was released.

391. No formal charges were brought against the Plaintiff nor do any Law Enforcement agencies, intend on filing formal criminal charges against the Plaintiff regarding this alleged incident.

392. Without Plaintiff's consent or knowledge, the check in the amount of $100,000 which had been removed from Plaintiff's possession, was returned by Defendant CITY by and through its officers ETHERIDGE, COLLINS and/or OCHKIE to "M.M".

393. At all times alleged hereto, Plaintiff had a clear right to due process pursuant to the

5th and 14th amendments to the United States Constitution to not be deprived of personal property by Law Enforcement, such as a check/money order, without formal notice and opportunity to be heard.

394.    To Plaintiff's best information and belief, Defendant CITY had no formal nor informal policies and procedures in place to determine rightful ownership of alleged contraband property removed by its officers from individuals when those citizens were not accused of a crime and failed to train its officers that its citizens have a lawful right to be heard to determine ownership, that being the protection of  private rights to property removed from their persons by Law Enforcement when not charged with a crime.

395.    As a result, Defendant CITY's officers returned the check removed from the Plaintiff's person to "M.M." without affording the Plaintiff the opportunity to be heard as to ownership pursuant to any legal and/or administrative procedures.

396.    Defendant CITY's failure to have procedures and to train Defendant CITY's officers resulted in a deprivation of Plaintiff's personal property in violation of the 5th and 14th Amendments United States Constitution, 42 U.S.C. Section 1983.

397.    As a result, Plaintiff suffered loss of the check in the amount of $100,000, the loss of use of that check, and resulting damages.

398.    Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages, attorney's fees pursuant to 42 U.S.C. Section 1988, and trial and jury.

**COUNT X-VIOLATION OF FLORIDA STATUTES 732.701-732.704 AS TO CITY**

399.     On or about June 29, 2018, the Plaintiff and an individual named "M'M' entered into an oral agreement wherein the individual M.M. was to purchase a sailboat from the Plaintiff for the sum of $100,000.

400.     In reliance on the agreement, the Plaintiff tendered to "M'M" the title to the sailboat, a bill of sale, and the keys.

401.     In exchange, M.M.tendered to the Plaintiff a cashier's check in the amount of $100,000.

402.     Unbeknownst to the Plaintiff, M. M contacted Law Enforcement indicating that the plaintiff had obtained that check by and through physical force in intimidation.

403.     Those allegations were false.

404.     The Defendant CITY, by and through the Defendant's officers, entered the bank with guns drawn, detaining the Plaintiff.

405.     The cashier's check, located on the desk of the bank representative, was detained and/or confiscated by Defendant CITY by and through its officers.

406.     Upon a further investigation Defendant CITY learned that the title, the bill of sale, and the keys which the Plaintiff had delivered to M'M were in the possession of  MM.

407.     The Defendant also learned during its investigation that the Plaintiff contended the Plaintiff sold the sailboat to a MM in exchange for the cashiers check in the amount of $100,000 pursuant to agreement.

408.     As a result of the Defendant CITY'S investigation, by and through Defendant CITY'S officers, the Plaintiff was released and no charges were filed.

409.     Without the Plaintiff's consent, and upon the request of M'M, the Defendant

54

CITY, by and through Defendant CITY'S officers, returned the cashier's check in the amount of $100,000 to MM, and returned the title, bill of sale and keys to the Plaintiff.

410.    In returning those items, the Defendant CITY made the sole determination as to whom those items belong, and failed to follow any legal or other procedures to determine rightful ownership of those items.

411.    No formal charges were brought against the Plaintiff nor do the Defendant, CITY, the SHERIFF, nor any other Law Enforcement agencies, intend on filing formal criminal charges against the Plaintiff regarding this alleged incident.

412.    The State of Florida has clearly defined statutory policies and procedures in place for Law Enforcement to follow when removing items allegedly used in criminal activity., that being "contraband", and the detention of those items, and/or giving those items to a third party, and failing to follow those procedures, would be a violation of an individual's right to due process. See Florida Statute 932.701-932.704.

413.    Defendant CITY'S Law Enforcement officers ETHERIDGE, COLLINS and/or OCHKIE, in retaining that check/money order after removal from Plaintiff's person, and in returning that check to M.M, failed to follow those statutory procedures.

414.    As a result, Plaintiff suffered the loss of $100,000, the loss of use of that property, accrued interest, and related damages.

WHEREFORE Plaintiff demands judgment against the CITY for damages and trial by jury.

### COUNT XI-TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS- CITY

415.    On or about June 29, 2018 the Plaintiff and an individual named "MM" entered into

an oral agreement wherein the individual M.M. was to purchase a sailboat from the Plaintiff for the sum of $100,000.

416.    In reliance on the agreement, the Plaintiff tendered to M.M the title to the sailboat, a bill of sale, and the keys.

417.    In exchange, M.M. tendered to the Plaintiff a cashier's check in the amount of $100,000.

418.    Unbeknownst to the Plaintiff, M.M contacted Law Enforcement indicating that the plaintiff had obtained that check by and through physical force (strangulation) and intimidation.

419.    Those allegations were false.

420.    The Defendant CITY, by and through the Defendant's officers ETHERIDGE, COLLINS and OCHKIE, and other of its officers, entered the bank with guns drawn, detaining the Plaintiff.

421.    The cashier's check, located on the desk of the bank representative, was detained and/or confiscated by defendant CITY by and through its officers.

422.    Upon a further investigation Defendant CITY learned that the title, the bill of sale, and the keys which the Plaintiff had delivered to M.M were in the possession of MM.

423.    The Defendant also learned during its investigation that the Plaintiff contended the Plaintiff sold the sailboat to a M.M in exchange for the cashiers check in the amount of $100,000 pursuant to agreement.

424.    As a result of Defendant CITY'S investigation, by and through Defendant CITY'S officers, the Plaintiff was released and no charges were filed.

425.     Without the Plaintiff's consent, and upon the request of M'M, the Defendant CITY, by and through Defendant CITY'S officers, returned the cashier's check in the amount of $100,000 to MM, and returned the title, bill of sale and keys to the Plaintiff.

426.     In returning those items, the Defendant CITY made a determination solely as to whom those items belonged, and failed to follow any legal or other procedures to determine rightful ownership of those items.

427.     At the time that those items were returned by Defendant CITY, Defendant CITY by and through its officers were aware that there was a business relationship between the Plaintiff and MM.

428.     The actions of Defendant CITY in returning those items were an intentional and unjustified interference with that relationship.

429.     As a result, the Plaintiff lost the sum of $100,000, loss of use of that sum inclusive of interest, and accrued storage and additional expenses in maintaining and storing the Plaintiff's sailboat.

WHEREFORE Plaintiff demands judgment for damages against Defendant CITY and trial by jury.

## COUNT XII-VIOLATION OF DUE PROCESS CITY

430.     On or about June 29, 2018, Plaintiff was in a bank inquiring as to the status of a check received by the Plaintiff as a result of Plaintiff's salable.

431.    Unbeknownst to the Plaintiff, the individual who purchased that sailboat falsely indicated to the bank and the CITY that Plaintiff had obtained that check by physical force and intimidation.

432.    Defendant CITY's deputies entered the bank along with Defendant CITY's deputies pointing firearms at the Plaintiff.

433.    Plaintiff was physically restrained by Defendant CITY'S officers causing serious physical injury to the Plaintiff including Plaintiff's right shoulder, Plaintiff's neck, lower back, right wrist, and injury to Plaintiff's brain.

434.    While Plaintiff was in a state of pain and shock, as a result of those injuries, Defendant CITY, by and through Defendant CITY's Law Enforcement officers, placed Plaintiff in   SHERIFF"s Law Enforcement vehicle.

435.    Plaintiff was subsequently moved to Defendant's CITY'S Law Enforcement vehicle.

436.    The Defendant CITY's Law Enforcement vehicle had no running air-conditioning.

437.    Plaintiff was placed in that vehicle during the summertime in extreme heat with the windows rolled up, the engine running,the air conditioning non-rumnning and the fan blowing.

438.    The temperature outside the vehicle was an estimated 84°F. The temperature inside the vehicle rose to over 120°F.

439.    The Plaintiff remained in the vehicle for an estimated 45 minutes.

440.    Plaintiff subsequently suffered from extreme heat, pain and shock.

441.    Plaintiff's calls for assistance, none was offered.

442.    Plaintiff remained placed inside that Law Enforcement vehicle for a period of an estimated 45 minutes.

443.    While being in pain and shock, and suffering from extreme heat while inside the vehicle, Plaintiff had difficulty breathing.

444.    Plaintiff's efforts were ignored.

445.    Due to extreme pain and shock, and the heat and lack of air-conditioning inside of the vehicle, Plaintiff physically passed out and hit Plaintiff's head on the vehicle

446.    Plaintiff was not provided with any medical attention.

447.    Plaintiff remained handcuffed the entire time.

448.    While Plaintiff believes Plaintiff was unconscious, Plaintiff was transported by the Defendant CITY to the Defendant CITY's Police Department, where Plaintiff regained consciousness.

449.    While in pain and shock and in handcuffs, Plaintiff was subsequently physically brought to an "interrogation room" located at Defendant CITY, City of St. Augustine Police Department (POLICE).

450.    The Plaintiff was placed in the interrogation room by the Defendant ETHERIDGE, COLLINS ad OCHKIE,. to obtain a "confession" from the Plaintiff.

451.    During the time that the plaintiff was in the "interrogation room" the Plaintiff had a substantive right to due process would to the 5th and 14th amendments to the United States Constitution to be free from an unreasonable interrogation that shocks the conscience of society.

452.    The Defendant ETHERIDGE, Defendant COLLINS and Defendant OCHKIE

knew or should have known of that right.

453.    At the time that the Plaintiff was brought to the Defendant CITY'S "interrogation room" Plaintiff had previously suffered a catastrophic injury to plaintiff's right shoulder/rotator cuff and attached tendon, severe spinal injuries to plaintiff's neck and lower back, injury to let plaintiff's leg and foot, nerve damage the Plaintiff's right arm and wrist, a brain injury, heatstroke, and mental anguish as a result of that the actions and lack of actions of the CITY, and the SHERIFF on that day.

454.    While physically injured, Plaintiff was placed in the "interrogation room" with freezing temperatures, those being somewhere in the 60s Fahrenheit.

455.    Due to the freezing temperature, Defendant ETHERIDGE, Defendant COLLINS, and Defendant OCHKIE, were wearing jackets.

456.    Plaintiff was wearing a T-shirt and shorts and was perspiring

457.    Due to pain and shock, Plaintiff requested of the CITY, by and through Defendant ETHERIDGE and Defendant COLLINS, that the handcuffs be removed and Plaintiff be allowed to use the restroom.

458.    These requests were denied.

459.    Plaintiff additionally requested medical attention.

460.    That request was denied.

461.    Plaintiff was subsequently verbally and physically aggressively questioned by and through the Defendant ETHERIDGE and Defendant COLLINS while Defendant OCHKIE and other Law Enforcement officers were nearby.

462.    Defendant ETHERIDGE slammed his fists on a table in front of the Plaintiff,

60

physically came towards the Plaintiff, and was raising his voice demanding that the Plaintiff "confess".

463.    Plaintiff was told by Defendant ETHERIDGE Plaintiff was being charged with serious felony charges, those being bank robbery, kidnapping of the elderly, battery on elderly, rape, at least 20 years each, Plaintiff would go away to prison for a long time, Plaintiff's wife would remarry and Plaintiff would go away for a long time.

464.    While Plaintiff remained in extreme pain and shock and in freezing conditions, while still handcuffed, Plaintiff continued to request medical attention of the CITY, by and through Defendant ETHERIDGE, Defendant COLLINS and Defendant OCHKIE.

465.    Plaintiff again requested to use the restroom. Those requests were denied.

466.    Plaintiff lost control of Plaintiff's bodily functions.

467.    During questioning, and under these conditions, Plaintiff denied the allegations and rather offered evidence in Plaintiff's defense.

468.    The CITY, by and through Defendant ETHERIDGE, continued to question Plaintiff with a raised voice, pounding on the table an estimated 4 feet from the Plaintiff, leaning over towards the Plaintiff, threatening the Plaintiff with a long prison term, and demanding that Plaintiff confess to the charges.

469.    While Defendant ETHERIDGE was directing these statements and actions towards the Plaintiff, Defendant OCHKIE and Defendant COLLINS and other of the CITY'S officers were present.

470.    No actions were taken by Defendants COLLINS nor Defendant OCHKIE directed at Defendant ETHERIDGE to cease these statements and actions.

471. Plaintiff continued to deny any wrongdoing and requested medical attention

472. That request was again ignored.

473. The CITY, by and through Defendant ETHERIDGE, Defendant COLLINS, and Defendant OCHKIE requested consent of Plaintiff to search Plaintiff's truck as well as take fingerprints, blood and DNA tests from the Plaintiff.

474. Plaintiff complied with those requests.

475. Defendant, ETHERIDGE, and Defendant COLLINS, continued to threaten Plaintiff with criminal charges and threatened that Plaintiff would be transferred to the local jail.

476. After a period of an estimated an hour and one half of being detained at the CITY POLICE, Defendant ETHERIDGE, Defendant OCHKIE and Defendant COLLINS, after reviewing the evidence, allowed Plaintiff to move around, removed all the handcuffs, and allowed Plaintiff to use the restroom.

477. After a period of time, the CITY, by and through the Defendant OCHKIE apologized to the Plaintiff on behalf of the Defendant's Police Department and indicated the investigation would continue.

478. Plaintiff was then released and free to leave. Plaintiff's cell phone was confiscated.

479. The "interrogation room" where Plaintiff had been questioned had a two-way mirror such that individuals could look into the room but individuals in the room could not look out.

480. The room also had a door.

481. During the time that the Plaintiff was being questioned by the CITY, by and through

Defendant ETHERIDGE, the CITY, by and through Defendant OCHKIE at some point, had physically moved M.M., to the outside of the door of the interrogation room where Plaintiff was being questioned.

482.    M.M. stated into the "interrogation room" that M.M. wanted his check back.

483.    Defendant OCHKIE was behind M.M. stating to Defendant ETHERIDGE, that M.M. wanted his check back.

484.    Defendant ETHERIDGE responded M.M. would get it back.

485.    During the course of the interrogation actions of Defendant ETHERIDGE , Defendant COLLINS and Defendant OCHKIE violated Plaintiff's constitutional right to substantive right due process pursuant the 5th and 14th amendments to the United States Constitution to be free from unreasonable detention and interrogation which shocks the conscience of society.

486.    As a result, Plaintiff suffered damages including physical pain and suffering, and mental anguish and humiliation, which are continuing.

487.    Further, as a result, subsequent to the interrogation Defendant ETHERIDGE, Defendant COLLINS and/or Defendant OCHKIE gave the check the amount of $100,000 for which had been removed from Plaintiff's person back to M.M. causing the Plaintiff to lose the benefits of that check.

488.    Plaintiff has retained the undersigned counsel to represent Plaintiff in this matter to counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against Defendant ETHERIDGE, Defendant COLLINS and Defendant OCHKIE, attorney's fees pursuant to

42 U.S.C. Section 1983, and trial by jury.

## COUNT XIII

### NEGLIGENT RETENTION AND/OR SUPERVISION AS TO THE CITY

489.     On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4285 US Highway 1 South, St. Augustine, Florida, 32086 with a cashier's check in hand in the amount of $100,000.

490.     On that date, Plaintiff was at the bank, in a bank manager's office, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

491.     Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

492.     Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force an intimidation.

493.     As a result of those allegations by M.M., Defendant CITY, by and through ETHERIDGE,   COLLINS, and OCHKIE, and other of Defendant CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

494.     The Plaintiff was sitting in a bank officer office alone with no officers present.

495.     Without provocation or resistance from the Plaintiff, ETHERIDGE directed Plaintiff to "hit the floor."

496.     In response, the Plaintiff began to move towards the floor.

497.     Without provocation or resistance from the Plaintiff, ETHERIDGE grabbed the

64

back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

498.    With the assistance of COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

499.    COLLINS placed his knee on the left side of Plaintiff's neck.

500.    ETHERIDGE placed a handcuff on Plaintiff's left arm.

501.    At that time, ETHRIDGE and COLLINS congratulated themselves on their fast response to the bank with a "high-five" slap and laughter.

502.    With his knee on Plaintiff's lower back, and with COLLINS' knee was on the left side of Plaintiff's neck, ETHERIDGE forcefully wrenched Plaintiff's right arm upward towards Plaintiff's shoulders and head attempting to place handcuff on the Plaintiff.

503.    There was a loud pop in Plaintiff's left shoulder and neck and Plaintiff felt immediate pain.

504.    ETHERIDGE noted that plaintiff's right arm and shoulder were "loose", stated "huh", and appeared to be surprised.

505.    Plaintiff went into shock, was shaking, and had trouble breathing.

506.    Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from  ETHERIDGE, COLLINS, OCHKIE, SHERIFF and other Law Enforcement officers

507.    There was no response nor assistance.

508.    ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist. .

509.    Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

510.    COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

511.    Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from ETHERIDGE, COLLINS , OCHKIE, SHERIFF and other Law Enforcement officers.

512.    There again was no response nor assistance.

513.    While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

514.    While Plaintiff was in pain and shock, sweating and shaking, and having trouble breathing, the CITY, by and through ETHERIDGE and COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

515.    Plaintiff again yelled out from immediate extereme pain.

516.    Plaintiff again requested medical assistance.

517.    The request for medical assistance from Plaintiff was again ignored by Defendant CITY, by and through ETHERIDGE, COLLINS, and OCHKIE, SHERIFF and other Law Enforcement officers present. .

518.    After being picked up, Plaintiff's hands, arms and wrists then moved downward.

519.    With difficulty walking, the Plaintiff was physically walked through the front door of the bank by   ETHERIDGE and COLLINS.

520.    Plaintiff remained in severe pain, was physically shaking, had difficulty breathing, was dizzy, stumbling, disoriented and was in shock

521.    Plaintiff was pale white.

66

522. No medical attention was provided to the Plaintiff.

523. Defendant CITY by and through ETHERIDGE and COLLINS, brought M.M. to Plaintiff to identify Plaintiff.

524. Duty of Plaintiff's physical condition, Plaintiff was physically held up by ETHERIDGE such that M.M. could identify.the Plaintiff.

525. To Plaintiff's best information and belief there were a number of minutes from the time there a pop in Plaintiff's shoulder until Plaintiffnff was identified by M.M.

526. Defendant CITY, by and through Defendant's Law Enforcement officers, briefly placed Plaintiff in SHERIFF's Law Enforcement vehicle.

527. While Plaintiff continued to be in severe pain, physically shaking, having difficulty breathing, and being dizzy and disoriented, and with handcuffs behind Plaintiff's back, Plaintiff was moved by the CITY, by whom Plaintiff believes to be ETHERIDGE, to Defendant CITY's Law Enforcement vehicle.

528. The Plaintiff at that time had suffered a torn rotator cuff and detached tendon in Plaintiff's right shoulder, three herniated discs in Plaintiff's neck, and three herniated discs and one torn disc in Plainff's lower back, nerve damage in Plaintiff's right wrist, nerve damage on th right side of Plaintiff's body, and retsricted blood flow to Plaintiff's brain (brain damage).

529. After an estimated five minutes, Plaintiff was then placed in Defendant CITY'S Law Enforcement vehicle.

530. Defendant CITY'S Law Enforcement officer was in the driver's seat of that vehicle.

531. The vehicle was running, the air-conditioning was not functioning, and the windows were completely rolled up.

532. Plaintiff complained to Defendant CITY'S Law Enforcement officer the vehicle was too hot. Plaintiff again requested medical attention. No assistance was provided.

533. Defendant CITY'S Law Enforcement officer agreed the vehicle was too hot, stated the air-conditioning was non functioning, exited the vehicle, and closed the door.

534. The Plaintiff remained in that vehicle in the back seat with handcuffs behind Plaintiff's back while the windows continued to be completely rolled up.

535. The temperature was an estimated 85°F outside.

536. The temperature inside of the vehicle increased to over 120° F.

537. Immediately on the sidewalk in front of the car were Defendant CITY, by and through ETHERIDGE, COLLINS, OCHKIE , the CITY'S driver, and SHERIFF'S deputies observing the Plaintiff.

538. Plaintiff became dizzy and had difficulty talking.

539. While in the back seat and in handcuffs, Plaintiff moved Plaintiffniff's head back and forth and moved Plainiff's lips to get the attention of Defendant CITY, by and through ETHERIDGE, COLLINS, OCHKIE, the CITY'S driver, and SHERIFF'S deputies, who were observing the Plaintiff.

540. Defendant CITY, by and through ETHERIDGE, COLLINS, OCHKIE, Defendant CITY'S Driver and SHERIFF'S deputies were aware the vehicle had non functioning air conditioning and was running.

541.    No efforts were made to assist the Plaintiff, to remove the Plaintiff from the vehicle, to roll down the windows, nor to provide medical attention.

542.    After an estimated 15-20 minutes of being in the vehicle, the Plaintiff physically passed out falling over onto the seat hitting the Plaintiff's head.

543.    To Plaintiff's best information and belief, the temperature inside the vehicle contined to over 120 degrees F.

544.    Again, no efforts were made to assist the Plaintiff, that being to remove Plaintiff from the vehicle, roll down the windows, loosen the handcuffs, provide Plaintiff with any water, nor provide any medical attention.

545.    Defendant CITY'S Law Enforcement /driver entered the vehicle and proceeded to drive the Plaintiff to the CITY'S POLICE station.

546.    Enroute to the station, a few minutes later the Plaintiff briefly regained consciousness.

547.    Upon briefly regaining consciousness, Plaintiff again requested medical assistance, inclusive of asking that Defendant CITY's Law Enforcement Officer/Driver to take Plaintiff to the local hospital while the vehicle was passing by.

548.    Plaintiff's was told to "sit back and relax" as Plaintiff was being brought to the POLICE station.

549.    To Plaintiff's best information and belief, Plaintiff again lost consciousness and did not regain consciousness until arriving at Defendant CITY'S POLICE station at which time, to Plaintiff's best information and belief, Defendant CITY made efforts to revive Plaintiff with smelling salts.

69

550. To Plaintiff's best information and belief, Plaintiff was in Defendant CITY'S Law Enforcement vehicle a total time of at least forty five (45) minutes. .

551. Handcuffs remained behind Plaintiff's back the entire time.

552. The Plaintiff suffered a stroke, and neurological damage to Plaintiff's brain

553. While in continued pain and shock, dizzy, with trouble breathing, and in handcuffs, Plaintiff was subsequently physically brought to an "interrogation room" located at Defendant CITY, City of St. Augustine Police Department (POLICE).

554. The Plaintiff was placed in the interrogation room by the Defendant CITY's officers to obtain a "confession" from the Plaintiff.

555. Plaintiff was placed in the "interrogation room" with freezing temperatures, those being somewhere in the 60s Fahrenheit.

556. Due to the freezing temperature, Defendant CITY's officers ETHERIDGE, COLLINS, and OCHKIE, were wearing jackets.

557. Plaintiff was wearing a T-shirt and shorts, and was not allowed this opportunity.

558. Due to pain and shock, with difficulty talking, while perspiring, Plaintiff requested of Defendant CITY, by and through ETHERIDGE and COLLINS, that the handcuffs be removed and Plaintiff be allowed to use the restroom.

559. These requests were denied.

560. Plaintiff additionally again requested medical attention.

561. That request was denied.

562. Plaintiff was subsequently verbally and physically aggressively questioned by and through Defendant CITY by and through ETHERIDGE and COLLINS while OCHKIE

70

and other Law Enforcement officers were nearby.

563. Defendant CITY by and through ETHERIDGE slammed his fists on a table in front of the Plaintiff, physically came towards the Plaintiff, and was raising his voice demanding that the Plaintiff "confess".

564. While Plaintiff remained in extreme pain and shock and in freezing conditions, Plaintiff continued to request medical attention of Defendant CITY, by and through ETHERIDGE, COLLINS and OCHKIE.

565. Plaintiff requested to use the restroom. Those requests were denied.

566. Plaintiff lost control of Plaintiff's bodily functions.

567. Defendant CITY, by and through ETHERIDGE, continued to question Plaintiff with a raised voice, pounding on the table an estimated 4 feet from the Plaintiff, leaning over towards the Plaintiff, threatening the Plaintiff with a long prison term, and demanding that Plaintiff confess to the charges.

568. Plaintiff continued to deny any wrongdoing and requested medical attention

569. That request was again ignored.

570. Defendant CITY, by and through ETHERIDGE, COLLINS, and OCHKIE requested consent of Plaintiff to search Plaintiff's truck as well as take fingerprints, blood and DNA tests from the Plaintiff.

571. Plaintiff complied with those requests.

572. Defendant CITY by and through ETHERIDGE, and COLLINS, continued to threaten Plaintiff with criminal charges and threatened that Plaintiff would be transferred to the local jail.

573.    After a period of an estimated an hour and one half of being detained at Defendant CITY's POLICE station, ETHERIDGE, COLLINS and COLLINS, after reviewing the evidence, allowed Plaintiff to move around, removed all the handcuffs, and allowed Plaintiff to use the restroom.

574.    After a period of time, Defendant CITY, by and through the OCHKIE apologized to the Plaintiff on behalf of the Defendant's Police Department and indicated the investigation would continue.

575.    Plaintiff was then released and free to leave. Plaintiff's cell phone was confiscated.

576.    Upon being released, no efforts were made to question the Plaintiff regarding the Plaintiff's injuries nor offer medical assistance.

577.    During the time that the Plaintiff was being transported by Defendant CITY to Defendant CITY's POLICE station, Plaintiff's spouse arrived at the bank.

578.    Plaintiff's spouse, by and through Defendant CITY, by and through ETHERIDGE was informed the Plaintiff had serious charges and Plaintiff would be going away for a long time.

579.    Defendant CITY by and through ETHERIDGE made this statement in front of Plaintiff's young children.

580.    The "interrogation room" where Plaintiff had been questioned had a two-way mirror such that individuals could look into the room but individuals in the room could not look out.

581.    The room also had a door.

582.    During the time that the Plaintiff was being questioned by the Defendant CITY, by

72

and through ETHERIDGE, the door was opened.

583.     The Defendant CITY, by and through OCHKIE had physically moved M.M., to the outside of that door while the Plaintiff was being questioned.

584.     M.M. stated into the "interrogation room" M.M. wanted his check back.

585.     OCHKIE was behind M.M. stating to CITY, by and through ETHERIDGE, that M.M. wanted his check back. ETHERIDGE responded M.M. would get it back.

586.     No formal charges were brought against the Plaintiff nor do the Defendant CITY, SHERIFF nor any other Law Enforcement agencies, intend on filing formal criminal charges against the Plaintiff regarding this alleged incident.

587.     Without Plaintiff's consent or knowledge, the check in the amount of $100,000 which had been removed from Plaintiff's possession was returned by Defendant CITY to M.M.

588.     At no time prior to removing that check from the Plaintiff's person and returning that check did the Defendant CITY file any criminal charges against the Plaintiff nor does the Defendant CITY intend on filing any criminal charges against the Plaintiff.

589.     At no time alleged hereto did the Defendant CITY  follow any legal process, inclusive of notice and opportunity to be heard, prior to returning the check to M.M.

590.     At all times alleged hereto, ETHERIDGE was an employee of the Defendant CITY

591.     ETHERIDGE at all times alleged hereto was acting in a supervisory capacity on behalf of Defendant CITY.

592.     All of the actions and words of ETHERIDGE alleged hereto were within the scope of ETHERIDGE'S employment or duties for Defendant CITY.

73

593. At all times alleged hereto, ETHERIDGE was acting in a supervisory capacity on behalf of Defendant CITY.

594. Defendant CITY, by and through the City of St. Augustine Police Department owed a duty of care to members of the public, inclusive of the Plaintiff, to exercise reasonable care in hiring, retaining, and supervising its employees.

595. Defendant CITY incorporated into the Defendant CITY's training procedures for Defendant CITY's Law Enforcement officers language adopted by and through the State of Florida Department of Law Enforcement.

596. Specifically, Defendant CITY's Law Enforcement officers took an oath indicating "as a Law Enforcement officer, my fundamental duty is to serve mankind, safeguard lives and property, to protect the innocent against deception, the weak against impression or intimidation, and peace against violence or disorder, and to respect the constitutional rights of all men to liberty, equality and justice." Defendant CITY's Law Enforcement officers also took an oath indicating "I will never act officiously or permit personal feelings, prejudices, animosities, or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force of violence and never accepting gratuities".

597. The Defendant CITY had a duty to monitor and supervise and train Defendant CITY's employees to ensure that they were fit for duty to comply with those oaths and other standards required for Law Enforcement officers in performance of their duties, inclusive of interaction with the public.

74

598. During the time that Defendants CITY'S Officer ETHERIDGE was performing duties on behalf of the Defendant CITY in reference to the Plaintiff, the Defendant CITY knew that ETHERIDGE was "quick to lose patience with individuals who do not meet his level of expectations", and that characteristic was inconsistent with the oath taken by Defendant CITY's. officer of performing duties as a Law Enforcement officer.

599. Defendant CITY had been aware that ETHERIDGE had been employed by the Defendant CITY for several years prior to the incident with the Plaintiff.

600. Defendant CITY's acknowledgement that ETHERIDGE was "quick to lose patience with individuals who did not meet his level of expectations" was contrary to the character of ETHERIDGE as a Law Enforcement officer.

601. Despite the Defendant CITY being aware, the Defendant CITY failed to take appropriate actions in either disciplining and/or training and/or investigating the cause of ETHERIDGE'S issues with losing patience.

602. Further, an estimated none (9) weeks after the actions of ETHERIDGE directed at Plaintiff, Defendant CITY noted that ETHERIDGE had an issue using prescription medications for which ETHERIDGE was eventually terminated from employment.

603. To Plaintiff's best information and belief, ETHERIDGE was abusing those medications at the time that ETHERIDGE performed those duties in reference to the Plaintiff and Defendant CITY knew or should have known that ETHERIDGE was not fit for duty and further action was necessary.

604. ETHERIDGE had been shaking continuously in the bank during the time Plaintiff was restrained and handcuffed by ETHERIDGE. COLLINS asked ETHERIDGE if

COLLINS should take over to which ETHERIDGE indicated "no."

605.    Defendant CITY, by and through its supervisors or administrators, breached its duty of care to the public by failing to properly supervise, provide training, and/or take remedial actions regarding ETHERIDGE.

606.    But for the CITY's failure to properly train, supervise and/or take further actions regarding ETHERIDGE, the actions of ETHERIDGE would not have been inconsistent with the oaths taken by ETHERIDGE and other requirements as a Law Enforcement officer on behalf of Defendant CITY, and Plaintiff would not have suffered damages inclusive of a torn rotator cuff to Plaintiff's right shoulder, resulting rehabilitation and permanent injur, 3 herniated disc in Plaintiff's neck, 3 herniated discs in Plaintiff's lower back, brain damage , partial loss of sight with a projection of a shortened lifespan, pain and suffering, erectile dysfunction, mental anguish and humiliation, loss of earnings, accrual of medical bills and loss of property.

607.    On or about July 8, 2019, Plaintiff served Defendant CITY and the State of Florida Department of Insurance with Notice of Intent pursuant to chapter 768 of the Florida Statutes and has exhausted any and all administrative remedies herein.

WHEREFORE Plaintiff demands judgment for damages and trial by jury.

## COUNT XIV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-CITY

608.    On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4295 US Highway 1 South, St. Augustine, Florida, 32086 with a cashier's check in hand in the amount of $100,000.

76

609.    On that date, Plaintiff was at the bank, in a bank manager's office, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

610.    Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

611.    Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force and intimidation.

612.    As a result of those allegations by M.M., Defendant CITY, by and through ETHERIDGE, Defendant COLLINS, and OCHKIE, and other of Defendant CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

613.    The Plaintiff was sitting in a bank officer's office alone with no officers present.

614.    Without provocation or resistance from the Plaintiff, ETHERIDGE directed Plaintiff to "hit the floor."

615.    In response, the Plaintiff began to move towards the floor.

616.    Without provocation or resistance from the Plaintiff, ETHERIDGE grabbed the back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

617.    With the assistance of COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

618.    COLLINS placed his knee on the left side of Plaintiff's neck.

619.    ETHERIDGE placed a handcuff on Plaintiff's left arm.

620.    At that time, ETHERIDGE and COLLINS congratulated themselves on their fast

response to the bank with a "high-five" slap and laughter.

621. With his knee on Plaintiff's lower back, and with COLLINS' knee was on the left side of Plaintiff's neck, ETHERIDGE forcefully wrenched Plaintiff's right arm upward towards Plaintiff's shoulders and head attempting to place a handcuff on the Plaintiff.

622. There was a loud pop in Plaintiff's left shoulder and neck and Plaintiff felt immediate pain.

623. Plaintiff went into shock, was shaking, and had trouble breathing.

624. Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from ETHERIDGE, COLLINS, OCHKIE, SHERIFF and other Law Enforcement officers

625. There was no response nor assistance.

626. ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist. .

627. Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

628. COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

629. Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from ETHERIDGE, COLLINS , OCHKIE, SHERIFF and other Law Enforcement officers.

630. There again was no response nor assistance.

631. While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

632. While Plaintiff was in pain and shock, sweating and shaking, and having trouble

breathing, the CITY, by and through ETHERIDGE and COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

633.    Plaintiff again yelled out from immediate extereme pain.

634.    Plaintiff again requested medical assistance.

635.    The request for medical assistance from Plaintiff was again ignored by Defendant CITY, by and through ETHERIDGE, COLLINS, and OCHKIE, SHERIFF and other Law Enforcement officers present. .

636.    After being picked up, Plaintiff's hands, arms and wrists then moved downward.

637.    With difficulty walking, the Plaintiff was physically walked through the front door of the bank by  ETHERIDGE and COLLINS.

638.    Plaintiff remained in severe pain, was physically shaking, had difficulty breathing, was dizzy, stumbling, disoriented and was in shock

639.    Plaintiff was pale white.

640.    No medical attention was provided to the Plaintiff.

641.    Defendant CITY by and through ETHERIDGE and COLLINS, brought M.M. to Plaintiff to identify Plaintiff.

642.    Due to Plaintiff's physical condition, Plaintiff was physically held up by ETHERIDGE such that M.M. could identify.the Plaintiff.

643.    To Plaintiff's best information and belief there were a number of minutes from the time there a pop in Plaintiff's shoulder until Plaintiffnff was identified by M.M.

79

644.    Defendant CITY, by and through Defendant's Law Enforcement officers, briefly placed Plaintiff in SHERIFF's Law Enforcement vehicle.

645.    While Plaintiff continued to be in severe pain, physically shaking, having difficulty breathing, and being dizzy and disoriented, and with handcuffs behind Plaintiff's back, Plaintiff was moved by the Defendant CITY, by whom Plaintiff believes to be ETHERIDGE, to Defendant CITY's Law Enforcement vehicle.

646.    The Plaintiff at that time had suffered a torn rotator cuff and detached tendon in Plaintiff's right shoulder, three herniated discs in Plaintiff's neck, and three herniated discs and one torn disc in Plainff's lower back, nerve damage in Plaintiff's right wrist, nerve damage on th right side of Plaintiff's   body, and retsricted blood flow to Plaintiff's brain (brain damage).

647.    After an estimated five minutes, Plaintiff was then placed in Defendant CITY'S Law Enforcement vehicle.

648.    Defendant CITY'S Law Enforcement officer was in the driver's seat of that vehicle.

649.    The vehicle was running, the air-conditioning was not functioning, and the windows were completely rolled up.

650.    Plaintiff complained to Defendant CITY'S Law Enforcement officer the vehicle was too hot. Plaintiff again requested medical attention. No assistance was provided.

651.    Defendant CITY'S Law Enforcement officer agreed the vehicle was too hot, stated the air-conditioning was non functioning, exited the vehicle, and closed the door.

652.    The Plaintiff remained in that vehicle in the back seat with handcuffs behind Plaintiff's back while the windows continued to be completely rolled up.

653. The temperature was an estimated 85°F outside.

654. The temperature inside of the vehicle increased to over 120° F.

655. Immediately on the sidewalk in front of the car were Defendant CITY, by and through ETHERIDGE, COLLINS, OCHKIE , the CITY'S driver, and SHERIFF'S deputies observing the Plaintiff.

656. Plaintiff became dizzy and had difficulty talking.

657. While in the back seat and in handcuffs, Plaintiff moved Plaintiffniff's head back and forth and moved Plainiff's lips to get the attention of Defendant CITY, by and through ETHERIDGE, COLLINS, OCHKIE, the CITY'S driver, amd SHERIFF'S deputies, who were observing the Plaintiff.

658. Defendant CITY, by and through ETHERIDGE, COLLINS, OCHKIE, Defendant CITY'S Driver and SHERIFF'S deputies were aware the vehicle had non functioning air conditioning.

659. No efforts were made to assist the Plaintiff, to remove the Plaintiff from the vehicle, to roll down the windows, nor to provide medical attention.

660. After an estimated 15-20 minutes of being in the vehicle, the Plaintiff physically passed out falling over onto the seat hitting the Plaintiff's head.

661. To Plaintiff's best information and belief, the temperature inside the vehicle contined to over 120 degrees F.

662. Again, no efforts were made to assist the Plaintiff, that being to remove Plaintiff from the vehicle, roll down the windows, loosen the handcuffs, provide Plaintiff with any water, nor provide any medical attention.

663.    Defendant CITY'S Law Enforcement /driver entered the vehicle and proceeded to drive the Plaintiff to the CITY'S POLICE station.

664.    Enroute to the station, a few minutes later the Plaintiff briefly regained consciousness.

665.    Upon briefly regaining consciousness, Plaintiff again requested medical assistance, inclusive of asking that Defendant CITY's Law Enforcement officer/driver to take Plaintiff to the local hospital while the vehicle was driving by.

666.    Plaintiff's was told to "sit back and relax" as Plaintiff was being brought to the POLICE station.

667.    To Plaintiff's best information and belief, Plaintiff again lost consciousness and did not regain consciousness until arriving at Defendant CITY'S POLICE station at which time, to Plaintiff's best information and belief, Defendant CITY made efforts to revive Plaintiff with smelling salts.

668.    To Plaintiff's best information and belief, Plaintiff was in Defendant CITY'S Law Enforcement vehicle a total time of at least forty five (45) minutes.   .

669.    Handcuffs remained behind Plaintiff's back the entire time.

670.    The Plaintiff suffered a stroke, and neurological damage to Plaintiff's brain

671.    While in continued pain and shock, dizzy, with trouble breathing, and in handcuffs, Plaintiff was subsequently physically brought to an "interrogation room" located at Defendant CITY, City of St. Augustine Police Department (POLICE).

672.    The Plaintiff was placed in the interrogation room by the Defendant CITY's officers to obtain a "confession" from the Plaintiff.

82

673.     Plaintiff was placed in the "interrogation room" with freezing temperatures, those being somewhere in the 60s Fahrenheit.

674.     Due to the freezing temperature, Defendant CIT's officers ETHERIDGE, COLLINS, and  OCHKIE, were wearing jackets.

675.     Plaintiff was wearing a T-shirt and   shorts, and was not allowed this opportunity.

676.     Due to pain and shock, with difficulty talking, while perspiring, Plaintiff requested of Defendant CITY, by and through ETHERIDGE and Defendant COLLINS, that the handcuffs be removed and Plaintiff be allowed to use the restroom.

677.     These requests were denied.

678.     Plaintiff additionally again requested medical attention.

679.     That request was denied.

680.     Plaintiff was subsequently verbally and physically aggressively questioned by and through Defendant CITY by ETHERIDGE and COLLINS while OCHKIE and other Law Enforcement officers were nearby.

681.     Defendant  CITY by and through ETHERIDGE slammed his fists on a table in front of the Plaintiff, physically came towards the Plaintiff, and was raising his voice demanding that the Plaintiff "confess."

682.     While Plaintiff remained in extreme pain and shock and in freezing conditions, Plaintiff continued to request medical attention of Defendant CITY, by and through ETHERIDGE,  COLLINS and OCHKIE.

683.     Plaintiff requested to use the restroom.Those requests were denied.

684.     Plaintiff lost control of Plaintiff's bodily functions.

685.    Defendant CITY, by and through ETHERIDGE, continued to question Plaintiff with a raised voice, pounding on the table an estimated 4 feet from the Plaintiff, leaning over towards the Plaintiff, threatening the Plaintiff with a long prison term, and demanding that Plaintiff "confess" to the charges.

686.    Plaintiff continued to deny any wrongdoing and requested medical attention

687.    That request was again ignored.

688.    Defendant CITY, by and through ETHERIDGE, COLLINS, and OCHKIE requested consent of Plaintiff to search Plaintiff's truck as well as take fingerprints, blood and DNA tests from the Plaintiff.

689.    Plaintiff complied with those requests.

690.    Defendant CITY by and through ETHERIDGE, and COLLINS, continued to threaten Plaintiff with criminal charges and threatened that Plaintiff would be transferred to the local jail.

691.    After a period of an estimated an hour and one half of being detained at Defendant CITY POLICE, ETHERIDGE, COLLINS and COLLINS, after reviewing the evidence, allowed Plaintiff to move around, removed all the handcuffs, and allowed Plaintiff to use the restroom.

692.    After a period of time, Defendant CITY, by and through the OCHKIE apologized to the Plaintiff on behalf of the Defendant's Police Department and indicated the investigation would continue.

693.    Plaintiff was then released and free to leave. Plaintiff's cell phone was confiscated.

694.    Upon being released, no efforts were made to question the Plaintiff regarding the

Plaintiff's injuries nor offer medical assistance.

695.    During the time that the Plaintiff was being transported by Defendant CITY to Defendant CITY's POLICE station, Plaintiff's spouse arrived at the bank.

696.    Plaintiff's spouse, by and through Defendant CITY, by and through ETHERIDGE was informed the Plaintiff had serious charges and Plaintiff would be going away for a long time.

697.    Defendant CITY by and through ETHERIDGE made this statement in front of Plaintiff's young children.

698.    The above stated actions of Defendant CITY, by and through the Defendant CITY's officers, were a deliberate or reckless infliction of mental suffering on the Plaintiff.

699.    The actions of Defendant CITY, by and through Defendant CITY's officers, were outrageous.

700.    The actions of Defendant CITY, by and through Defendant CITY's officers, caused the Plaintiff emotional distress.

701.    The emotional distress suffered by the Plaintiff was severe.

702.    On or about July 8, 2019, Plaintiff served on Defendant CITY and the State of Florida Department of Insurance a Notice of Intent to Sue pursuant to chapter 768 of the Florida Statutes and has exhausted any and all administrative remedies herein.

WHEREFORE Plaintiff demands judgement for damages against Defendant CITY and trial by jury.

## COUNT XV

### UNREASONABLE SEARCH AND SEIZURE DEFENDANT ETHERIDGE, FAILURE TO OBTAIN MEDICAL TREATMENT 42 USC Section 1983

703.    On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4295 US Highway 1 South, St. Augustine, Florida, 32086, with a cashier's check in hand in the amount of $100,000.

704.    On that date, Plaintiff was at the bank, in a bank manager's office, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

705.    Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

706.    Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force an intimidation.

707.    As a result of those allegations by M.M., the CITY, by and through Defendant ETHERIDGE, COLLINS, and OCHKIE, and other of the CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

708.    The bank officer had previously left the office. The Plaintiff was sitting at the desk alone with no other bank employees in the office.

709.    Without provocation or resistance from the Plaintiff, Defendant ETHERIDGE directed Plaintiff to "hit the floor."

86

710.    Without provocation or resistance from the Plaintiff, Defendant ETHERIDGE grabbed the back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

711.    With the assistance of COLLINS, Defendant ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

712.    COLLINS placed his knee on the left side of Plaintiff's neck.

713.    Defendant ETHERIDGE placed a handcuff on Plaintiff's left arm.

714.    With his knee on Plaintiff's lower back, and with COLLINS' knee was on the left side of Plaintiff's neck, Defendant ETHERIDGE forcefully wrenched Plaintiff's right arm upward towards Plaintiff's shoulders and the middle of Plaintiff's head attempting to place handcuff on the Plaintiff.

715. There was a loud pop in Plaintiff's left shoulder and neck and Plaintiff felt immediate pain.

716. Defendant ETHERIDGE noted that the plaintiff's right shoulder and arm were "loose". Defendant ETHERIDGE stated "huh" and appeared to be surprised.

717. Plaintiff went into shock, was shaking, and had trouble breathing.

718. Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from Defendant ETHERIDGE, COLLINS, OCHKIE, SHERIFF and other Law Enforcement officers

719. There was no response nor assistance.

720. Defendant ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist. .

721. Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

722. COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

723. Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from Defendant ETHERIDGE, COLLINS , OCHKIE, SHERIFF and other Law Enforcement officers.

724. There again was no response nor assistance.

725. While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

726. While Plaintiff was in pain and shock, sweating and shaking, and having trouble breathing, the CITY, by and through Defendant ETHERIDGE and COLLINS, physically

picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

727.    Plaintiff again yelled out from immediate extereme pain.

728.    Plaintiff again requested medical assistance.

729.    The request for medical assistance from Plaintiff was again ignored by the CITY, by and through Defendant ETHERIDGE, COLLINS, OCHKIE SHERIFF and other Law Enforcement officers present.

730.    After being picked up, Plaintiff's hands, and arms and wrists then moved downward.

731.    With difficulty walking, the Plaintiff was physically walked through the front door of the bank by Defendant ETHERIDGE and COLLINS.

732.    From the time that Defendant ETHERIDGE entered  the bank office, Defendant ETHERIDGE was shaking, COLLINS asked Defendant ETHERIDGE if he wanted COLLINS to interverne to which Defendant ETHERIDGE said, " no."

733.    Plaintiff remained in severe pain, was physically shaking, had difficulty breathing, was dizzy, stumbling, disoriented and was in shock

734.    Plaintiff was pale white.

735.    No medical attention was provided to the Plaintiff.

736.    The CITY by and through Defendant ETHERIDGE, and COLLINS, brought M.M. to Plaintiff to identify Plaintiff.

737.    Duty of Plaintiff's physical condition, Plaintiff was physically held up by Defendant ETHERIDGE such that M.M. could identify.the Plaintiff.

738.    To Plaintiff's best information and belief there were a number of minutes from the time there a pop in Plaintiff's shoulder until Plaintiffnff was identified by M.M.

739.    The CITY, by and through Defendant's Law Enforcement officers, briefly placed Plaintiff in SHERIFF's Law Enforcement vehicle.

740.    While Plaintiff continued to be in severe pain, physically shaking, having difficulty breathing, and being dizzy and disoriented, and with handcuffs behind Plaintiff's back, Plaintiff was moved by the CITY, by whom Plaintiff believes to be Defendant ETHERIDGE, to Defendant CITY's Law Enforcement vehicle.

741.    The Plaintiff at that time had suffered a torn rotator cuff and detached tendon in Plaintiff's right shoulder, three herniated discs in Plaintiff's neck, and three herniated discs and one torn disc in Plainff's lower back, nerve damage in Plaintiff's right wrist, nerve damage on the right side of Plaintiff's  body, and retstricted blood flow to Plaintiff's brain (brain damage).

742.    After an estimated five minutes, he Plaintiff was then placed in the CITY'S Law Enforcement vehicle.

743.    The CITY'S Law Enforcement officer (name unknown) was in the driver's seat of that vehicle.

744.    The vehicle was running, the air-conditioning was not functioning, and the windows were completely rolled up.

745.    Plaintiff complained to the CITY'S Law Enforcement officer the vehicle was too hot. Plaintiff again requested medical attention. No assistance was provided.

746.    The CITY'S Law Enforcement officer agreed the vehicle was too hot, stated the air-conditioning was non functioning, exited the vehicle, and closed the door.

747.    The Plaintiff remained in that vehicle in the back seat with handcuffs behind Plaintiff's back while the windows continued to be completely rolled up.

748.    The temperature was was an estimated 85°F outside.

749.    The temperature inside of the vehicle increased to over 120° F.

750.    Immediately on the sidewalk in front of the car were the CITY, by and through Defendant ETHERIDGE, COLLINS, OCHKIE , the CITY'S driver, and SHERIFF'S deputies observing the Plaintiff.

751.    Plaintiff became dizzy and had difficulty talking.

752.    While in the back seat and in handcuffs, Plaintiff moved Plaintiffniff's head back and forth and moved Plainiff's lips to get the attention of the CITY, by and through Defendant ETHERIDGE, COLLINS, OCHKIE, the CITY'S driver, and SHERIFF'S deputies, who were observing the Plaintiff.

753.    The CITY, Defendant ETHERIDGE, COLLINS, OCHKIE, Defendant CITY'S Driver and SHERIFF'S deputies were aware the vehicle had non functioning air conditioning and the fan was running.

754.    No efforts were made to assist the Plaintiff, to remove the Plaintiff from the vehicle, to roll down the windows, nor to provide medical attention.

755.    After an estimated 15-20 minutes of being in the vehicle, the Plaintiff physically passed out falling over onto the seat hitting the Plaintiff's head.

91

756.     To Plaintiff's best information and belief, the temperature inside the vehicle continued to over 120 degrees F.

757.     Again, no efforts were made to assist the Plaintiff, that being remove Plaintiff from the vehicle, roll down the windows, loosen the handcuffs, provide Plaintiff with any water, nor provide any medical attention.

758.     The CITY'S Law Enforcement /driver entered the vehicle and proceeded to drive the Plaintiff to the CITY'S POLICE station.

759.     Enroute to the station, a few minutes later the Plaintiff briefly regained consciousness.

760.     Upon briefly regaining consciousness, Plaintiff again requested medical assistance, inclusive of asking that Defendant CITY's Law Enforcement officer/driver take Plaintiff to the local hospital while the vehicle was passing by.

761.     Plaintiff's was told to "sit back and relax" as Plaintiff was being brought to the POLICE station.

762.     To Plaintiff's best information and belief, Plaintiff again lost consciousness and did not regain consciousness until arriving at the CITY'S POLICE station at which time, to Plaintiff's best information and belief, the  CITY made efforts to revive Plaintiff with smelling salts.

763.     To Plaintiff's best information and belief, Plaintiff was in the CITY'S Law Enforcement vehicle a total time of at least forty five (45) minutes.

764.     Handcuffs remained behind Plaintiff's back the entire time.

765. The Plaintiff had additionally suffered a stroke, and neurological damage to Plaintiff's brain

766. While in continued pain and shock, dizzy, with trouble breathing, in handcuffs, Plaintiff was subsequently physically brought to an "interrogation room" located at the CITY, POLIC Station.

767. The Plaintiff was placed in the interrogation room by the Defendant ETHERIDGE and COLLINS to obtain a "confession" from the Plaintiff.

768. Despite Plaintiff's constitutional right, Plaintiff was placed in the "interrogation room" with freezing temperatures, those being somewhere in the 60s Fahrenheit.

769. Due to the freezing temperature, Defendant ETHERIDGE, COLLINS, and OCHKIE, were wearing jackets.

770. Plaintiff was wearing a T-shirt and shorts, and was not allowed this opportunity.

771. Due to pain and shock, with difficulty talking, while perspiring, Plaintiff requested of the CITY, by and through Defendant ETHERIDGE and COLLINS, that the handcuffs be removed and Plaintiff be allowed to use the restroom.

772. These requests were denied.

773. Plaintiff additionally again requested medical attention.

774. That request was denied.

775. Plaintiff was subsequently verbally and physically aggressively questioned by and through the Defendant ETHERIDGE and COLLINS while OCHKIE and other Law Enforcement officers were nearby.

776. Defendant ETHERIDGE slammed his fists on a table in front of the Plaintiff,

93

physically came towards the Plaintiff, and was raising his voice demanding that the Plaintiff "confess".

777. While Plaintiff remained in extreme pain and shock and in freezing conditions, Plaintiff continued to request medical attention of the CITY, by and through Defendant ETHERIDGE, COLLINS and OCHKIE.

778. Plaintiff requested to use the restroom.Those requests were denied.

779. Plaintiff lost control of Plaintiff's bodily functions.

780. The CITY, by and through Defendant ETHERIDGE, continued to question the Plaintiff with a raised voice, pounding on the table an estimated 4 feet from the Plaintiff, leaning over towards the Plaintiff, threatening the Plaintiff with a long prison term, and demanding that Plaintiff confess to the charges.

781. Plaintiff continued to deny any wrongdoing and requested medical attention

782. That request was again ignored.

783. The CITY, by and through Defendant ETHERIDGE, COLLINS, and OCHKIE requested consent of Plaintiff to search Plaintiff's truck as well as take fingerprints, blood and DNA tests from the Plaintiff.

784. Plaintiff complied with those requests.

785. Defendant, ETHERIDGE, and COLLINS, continued to threaten Plaintiff with criminal charges and threatened that Plaintiff would be transferred to the local jail.

786. After a period of an estimated an hour and one half of being detained at the CITY POLICE, Defendant ETHERIDGE, OCHKIE and COLLINS, after reviewing the evidence, allowed Plaintiff to move around, removed all the handcuffs, and allowed

Plaintiff to use the restroom.

787.     After a period of time, the CITY, by and through the Defendant OCHKIE apologized to the Plaintiff on behalf of the Defendant's Police Department and indicated the investigation would continue.

788.     Plaintiff was then released and free to leave. Plaintiff's cell phone was confiscated.

789.     Upon being released, no efforts were made to question the Plaintiff regarding the Plaintiff's injuries nor offer medical assistance.

790.     During the time Plaintiff was in  custody, Plaintiff had a right to be free from unreasonable search and seizure pursaunt to the Fourth and Fourteenth Amendments to the United States Constitution.

791.     Defendant ETHERIDGE knew or should have known during the time that the Plaintiff was in the custody of the CITY, the Plaintiff had a Constitutional right to receive medical care as a result of a serious medical injury and failure to do so by Law Enforcement would amount to deliberate indifference in violation of that right.

792.     Defendant ETHERIDGE's failure to provide medical assistance to the Plaintiff during the time the Plaintiff was in custody was a violation of that constitutional right.

793.     As a result Plaintiff suffered permanent injury to Plaintiffff's brain, that being extensive nerve trauma resulting in damage to Platinff's sight resulting in a projected shortened lifespan,, memory issues, cognitive dysfunction, difficulties with walking and balance, physical dysfunction, migraine headches, tinnitus, severe mental angush, erectile dysfunction, the need for extensive medical treatment, accrual of medical bills, loss of income and loss of the enjoyment of life. The losses are continuing.

794.    Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and agreement to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgement for damages againsy Defendant ETHERIDGE, punitice damages, attorneys fees pursuant to 42 USC Section 1988 and trial by jury.

## COUNT XVI

### UNREASONABLE SEARCH AND SEIZURE DEFENDANT COLLINS-FAILURE TO OBTAIN MEDICAL TREATMENT 42 USC Section 1983

795.    On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4285 US Highway 1 South, St. Augustine, Florida,   32086, with a cashier's check in hand in the amount of $100,000.

796.    On that date, Plaintiff was at the bank, in a bank manager's office, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

797.    Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

798.    Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force an intimidation.

799.    As a result of those allegations by M.M., the CITY, by and through ETHERIDGE, Defendant COLLINS, and OCHKIE, and other of the CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

800.    The Plaintiff was sitting in a bank office alone with no bank officers present.

801.    Without provocation or resistance from the Plaintiff, ETHERIDGE directed Plaintiff to "hit the floor."

802.    In response, the Plaintiff began to move towards the floor.

803.    Without provocation or resistance from the Plaintiff, ETHERIDGE grabbed the back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

804.    With the assistance of Defendant COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

805.    Defendant COLLINS placed his knee on the left side of Plaintiff's neck.

806.    ETHERIDGE placed a handcuff on Plaintiff's left arm.

807.    With his knee on Plaintiff's lower back, and with Defendant COLLINS' knee was on the left side of Plaintiff's neck, ETHERIDGE forcefully wrenched Plaintiff's right arm

upward towards Plaintiff's shoulders and head attempting to place a handcuff on the Plaintiff.

808.    There was a loud pop in Plaintiff's left shoulder and neck and Plaintiff felt immediate pain.

809.    ETHERIDGE noted the Pltnff's right shoulder and arm were hanging loose, stating "huh" and appeared to be surprised.

810.    Plaintiff went into shock, was shaking, and had trouble breathing.

811.    Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from  ETHERIDGE, Defendant COLLINS, OCHKIE, SHERIFF and other Law Enforcement officers

812.    There was no response nor assistance.

813.    ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist. .

814.    Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

815.    COLLINS and OCHKIE indicated Plaintiff's hands were turning red.

816.    Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from ETHERIDGE, Defendant COLLINS , OCHKIE, SHERIFF and other Law Enforcement officers.

817.    There again was no response nor assistance.

818.    While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

819.    While Plaintiff was in pain and shock, sweating and shaking, and having trouble

breathing, the CITY, by and through ETHERIDGE and Defendant COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

820.    Plaintiff again yelled out from immediate extereme pain.

821.    Plaintiff again requested medical assistance.

822.    The request for medical assistance from Plaintiff was again ignored by the CITY, by and through ETHERIDGE, Defendant COLLINS, OCHKIE, SHERIFF and other Law Enforcement officers present. .

823.    After being picked up, Plaintiff's hands, and arms and wrists then moved downward.

824.    With difficulty walking, the Plaintiff was physically moved through the front door of the bank by ETHERIDGE and Defendant COLLINS.

825.    Plaintiff remained in severe pain, was physically shaking, had difficulty breathing, was dizzy, stumbling, disoriented and was in shock

826.    Plaintiff was pale white.

827.    No medical attention was provided to the Plaintiff.

828.    The CITY by and through ETHERIDGE and Defendat COLLINS, brought M.M. to Plaintiff to identify Plaintiff.

829.    Duty of Plaintiff's physical condition, Plaintiff was physically held up by ETHERIDGE such that M.M. coud identify.the Plaintiff.

830.    To Plaintiff's best information and belief there were a number of minutes from the time there a pop in Plaintiff's shoulder until Plaintiffnff was identified by M.M.

99

831.    The CITY, by and through Defendant's Law Enforcement officers, briefly placed Plaintiff in SHERIFF's Law Enforcement vehicle.

832.    While Plaintiff continued to be in severe pain, physically shaking, having difficulty breathing, and being dizzy and disoriented, and with handcuffs behind Plaintiff's back, Plaintiff was moved by the CITY, by whom Plaintiff believes to be ETHERIDGE, to Defendant CITY's Law Enforcement vehicle.

833.    The Plaintiff at that time had suffered a torn rotator cuff and detached tendon in Plaintiff's right shoulder, three herniated discs in Plaintiff's neck, and three herniated discs and one torn disc in Plainff's lower back, nerve damage in Plaintiff's right wrist, nerve damage on th right side of Plaintiff's  body, and restricted blood flow to Plaintiff's brain (brain damage).

834.    After an estimated five minutes, he Plaintiff was then placed in the CITY'S Law Enforcement vehicle.

835.    The CITY'S Law Enforcement officer was in the driver's seat of that vehicle.

836.    The vehicle was running, the air-conditioning was not functioning, and the windows were completely rolld up.

837.    Plaintiff complained to the CITY'S Law Enforcement officer the vehicle was too hot. Plaintiff again requested medical attention. No assistance was provided.

838.    The CITY'S Law Enforcement officer agreed the vehicle was too hot, stated the air-conditioning was non functioning, exited the vehicle, and closed the door.

839.    The Plaintiff remained in that vehicle in the back seat with handcuffs behind Plaintiff's back while the windows continued to be completely rolled up.

840. The temperature was was an estimated 85°F outside.

841. The temperature inside of the vehicle increased to over 120° F.

842. Immediately on the sidewalk in front of the car were Defendant CITY, by and through ETHERIDGE, Defendant COLLINS, OCHKIE , the CITY'S driver, and SHERIFF'S deputies observing the Plaintiff.

843. Plaintiff became dizzy and had difficulty talking.

844. While in the back seat and in handcuffs, Plaintiff moved Plaintiff's head back and forth and moved Plaintiff's lips to get the attention of the CITY, by and through ETHERIDGE, Defendant COLLINS, OCHKIE, the CITY'S driver, amd SHERIFF'S deputies, who were observing the Plaintiff.

845. The CITY, ETHERIDGE, Defendant COLLINS, OCHKIE, Defendant CITY'S Driver and SHERIFF'S deputies were aware the vehicle had non functioning air conditioning and was running.

846. No efforts were made to assist the Plaintiff, to remove the Plaintiff from the vehicle, to roll down the windows, nor to provide medical attention.

847. After an estimated 15-20 minutes of being in the vehicle, the Plaintiff physically passed out falling over onto the seat hitting the Plaintiff's head.

848. To Plaintiff's best infromationa and belief, the temperature inside the vehicvle contined to over 120 degrees F.

849. Again, no efforts were made to assist the Plaintiff, that being remove Plaintiff from the vehicle, roll down the windows, loosen the handcuffs, provide Plaintiff with any water, nor provide any medical attention.

850. The CITY'S Law Enforcement /driver entered the vehicle and proceeded to drive the Plaintiff to the CITY'S POLICE station.

851. Enroute to the station, a few minutes later the Plaintiff briefly regained consciousness.

852. Upon briefly regaining consciousness, Plaintiff again requested medical assistance, inclusive of asking that Defendant CITY's law enfrocent officer/driver take Plaintiff to the local hospital while the vehicle was driving by.

853. Plaintiff's was told to "sit back and relax" as Plaintiff was being brought to the POLICE station.

854. To Plaintiff's best information and belief, Plaintiff again lost consciousness and did not regain consciousness until arriving at the CITY'S POLICE station at which time, to Plaintiff's best information and belief, the CITY made efforts to revive Plaintiff with smelling salts.

855. To Plaintiff's best information and belief, Plaintiff was in the CITY'S Law Enforcement vehicle a total tiem of at least forty five (45) minutes.   .

856. Handcuffs remained behind Plaintiff's back the entire time.

857. The Plaintiff, the Plaintiff had suffered a heatstroke, and neurological damage to Plaintiff's brain.

858. While in continued pain and shock, dizzy, with trouble breathing, in handcuffs, Plaintiff was subsequently physically brought to an "interrogation room" located at the CITY, City of St. Augustine Police Department (POLICE).

859. The Plaintiff was placed in the interrogation room by ETHERIDGE ad Defendant

COLLINS to obtain a "confession" from the Plaintiff.

860.    Plaintiff was placed in the "interrogation room" with freezing temperatures, those being somewhere in the 60s Fahrenheit.

861.    Due to the freezing temperature, ETHERIDGE, Defendant COLLINS, and OCHKIE, were wearing jackets.

862.    Plaintiff was wearing a T-shirt and shorts, and was not allowed this opportunity.

863.    Due to pain and shock, with difficulty talking, while perspiring, Plaintiff requested of the CITY, by and through ETHERIDGE and Defendant COLLINS, that the handcuffs be removed and Plaintiff be allowed to use the restroom.

864.    These requests were denied.

865.    Plaintiff additionally again requested medical attention.

866.    That request was denied.

867.    Plaintiff was subsequently verbally and physically aggressively questioned by and through the ETHERIDGE and Defendant COLLINS while OCHKIE and other Law Enforcement officers were nearby.

868.    ETHERIDGE slammed his fists on a table in front of the Plaintiff, physically came towards the Plaintiff, and was raising his voice demanding that the Plaintiff "confess".

869.    While Plaintiff remained in extreme pain and shock and in freezing conditions, Plaintiff continued to request medical attention of the CITY, by and through ETHERIDGE, Defendant COLLINS and OCHKIE.

870.    Plaintiff requested to use the restroom. Those requests were denied.

871.    Plaintiff lost control of Plaintiff's bodily functions.

872. The CITY, by and through ETHERIDGE, continued to question Plaintiff with a raised voice, pounding on the table an estimated 4 feet from the Plaintiff, leaning over towards the Plaintiff, threatening the Plaintiff with a long prison term, and demanding that Plaintiff confess to the charges.

873. Plaintiff continued to deny any wrongdoing and requested medical attention

874. That request was again ignored.

875. The CITY, by and through ETHERIDGE, Defendant COLLINS, and OCHKIE requested consent of Plaintiff to search Plaintiff's truck as well as take fingerprints, blood and DNA tests from the Plaintiff.

876. Plaintiff complied with those requests.

877. ETHERIDGE, and Defendant COLLINS, continued to threaten Plaintiff with criminal charges and threatened that Plaintiff would be transferred to the local jail.

878. After a period of an estimated an hour and one half of being detained at the CITY POLICE, ETHERIDGE, Defendant OCHKIE and COLLINS, after reviewing the evidence, allowed Plaintiff to move around, removed all the handcuffs, and allowed Plaintiff to use the restroom.

879. After a period of time, the CITY, by and through the OCHKIE apologized to the Plaintiff on behalf of the Defendant's Police Department and indicated the investigation would continue.

880. Plaintiff was then released and free to leave. Plaintiff's cell phone was confiscated.

881. Upon being released, no efforts were made to question the Plaintiff regarding the Plaintiff's injuries nor offer medical assistance.

882. During the time Plaintiff was in custody, Plaintiff had a right to be from unreasonable search and seizure pursuant to the Fourth and Foutenth Amendments to the United Constitution, 42 USC Section 1983.

883. Defendant COLLINS, as a Law Enforcement officer , knew or should known that not providing medical attention to a serious medical need of a detainee such as Plaintiff would constitute deliberate indifference in violation of that constitutional right.

884. Defendant COLLINS's faiure to obtain medical treatwent for Plaintiff was in viation of that right.

885. The actions of Defendant ETHERIDGE were willful and intentional.

886. As a result Plaintiff suffered injury to Plaintiffnff's brain and and permanent injury to Plaintiffff's brain, that being extensive nerve trauma resulting in damage to Platinff's sight resulting in a projected shortened lifespan, memory issues, cognitive dysfunction, difficulties walking and balance, physical dysfunction, migraine heaadches, tinnitus, severe mental angush, the need for extensive medical treatment, accrual of medical bills, loss of income and loss of the enjoyment of life. The losses are continuing.

887. Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and agreement to pay counsel a reasonable fee.

WHEREFORE Plaintiffff demands judgement for damages against Defendanjt COLLINS, punitice damages , attroenys fees pursuant to 42 USC Section 1988 and trial by jury.

## COUNT XVII

### UNREASONABLE SEARCH AND SEIZURE DEFENDANT OCHKIE- FAILURE TO OBTAIN MEDICAL TREATMENT 42 USC Section 1983

888. On or about June 29, 2018, the Plaintiff was at the Wells Fargo Bank located at 4285 US Highway 1 South, St. Augustine, Florida, 32086 with a cashier's check in hand in the amount of $100,000.

889. On that date, Plaintiff was at the bank, in a bank manager's office, for the purpose of inquiring as to the status of the check which had been drawn on the Wells Fargo Bank.

890. Plaintiff received the check from an individual M.M. (herein known as M.M.) in exchange for the sale of Plaintiff's sailboat to M.M.

891. Unbeknownst to Plaintiff, M.M. had contacted the Wells Fargo Bank and the CITY falsely alleging Plaintiff had obtained the check for $100,000 from M.M. by way of physical force an intimidation.

892. As a result of those allegations by M.M., the CITY, by and through ETHERIDGE, COLLINS, and Defendant OCHKIE, and other of the CITY'S officers, with assistance from the SHERIFF, entered the bank manager's office, surrounded the Plaintiff and pointed firearms at the Plaintiff.

893. The Plaintiff was sitting alone in the bank office. The bank officer had left and no other officers were present. .

894. Without provocation or resistance from the Plaintiff, ETHERIDGE directed Plaintiff to "hit the floor."

895. In response, the Plaintiff began to move towards the floor.

896. Without provocation or resistance from the Plaintiff, ETHERIDGE grabbed the

106

back of Plaintiff's shirt by the neck and forced Plaintiff to the floor face down.

897.      With the assistance of COLLINS, ETHERIDGE physically pressed on Plaintiff's lower back with his knee.

898.      COLLINS placed his knee on the left side of Plaintiff's neck.

899.      ETHERIDGE placed a handcuff on Plaintiff's left arm.

900.      With his knee on Plaintiff's lower back, and with COLLINS' knee was on the left side of Plaintiff's neck, ETHERIDGE forcefully wrenched Plaintiff's right arm upward towards Plaintiff's shoulders and the middle of Plaintiff's head attempting to place handcuff on the Plaintiff.

901.      ETHERIDGE noted the Plitnff's right shoduler and arm wer "loose" and stated "huh" and appeared to be surprised.

902.      Thee was a loud pop in Plaintiff's left shoulder and neck and Plaintiff felt immediate pain.

903.      Plaintiff went into shock, was shaking, and had trouble breathing.

904.      Plaintiff yelled out stating Plaintiff could not breath and requested medical assistance from ETHERIDGE, COLLINS, Defendant OCHKIE, SHERIFF and other Law Enforcement officers

905.      There was no response nor assistance.

906.      ETHERIDGE pulled Plaintiff's left arm up towards the middle of Plaintiff's head next to Plaintiff's right arm and then placed a handcuff on Plaintiff's right wrist. .

907.      Plaintiff complained that the handcuffs were too tight and Plaintiff was in pain.

908.      COLLINS and Defendant OCHKIE indicated Plaintiff's hands were turning red.

909.    Plaintiff continued to complain of pain and difficulty breathing and requested medical attention and assistance from ETHERIDGE, COLLINS , Defendant OCHKIE, SHERIFF and other Law Enforcement officers.

910.    There again was no response nor assistance.

911.    While on the floor face down, at some point, Plaintiff passed out. Plaintiff was administered smelling salts.

912.    While Plaintiff was in pain and shock, sweating and shaking, and having trouble breathing, the CITY, by and through ETHERIDGE and COLLINS, physically picked Plaintiff up from the floor by Plaintiff's elbows while Plaintiff's hands were near the middle of Plaintiff's head near the base of Plaintiff's skull.

913.    Plaintiff again yelled out from immediate extereme pain.

914.    Plaintiff again requested medical assistance.

915.    The request for medical assistance from Plaintiff was again ignored by the CITY, by and through ETHERIDGE,COLLINS, Defendant OCHKIE, SHERIFF and other Law Enforcement officers present.

916.    After being picked up, Plaintiff's hands, arms and wrists then moved downward.

917.    With difficulty walking, the Plaintiff was physically through the front door of the bank by   ETHERIDGE and COLLINS.

918.    Plaintiff remained in severe pain, was physically shaking, had difficulty breathing, was dizzy, stumbling, disoriented and was in shock

919.    Plaintiff was pale white.

920.    No medical attention was provided to the Plaintiff.

921.    The CITY by and through ETHERIDGE and COLLINS, brought M.M. to Plaintiff to identify Plaintiff.

922.    Due to Plaintiff's physical condition, Plaintiff was physically held up by ETHERIDGE such that M.M. coud identify.the Plaintiff.

923.    To Plaintiffniff's best information and belief there were a number of minutes from the time there a pop in Plaintiff's shoulder until Plaintiffnff was identified by M.M.

924.    The CITY, by and through Defendant's Law Enforcement officers, briefly placed Plaintiff in SHERIFF's Law Enforcement vehicle.

925.    While Plaintiff continued to be in severe pain, physically shaking, having difficulty breathing, and being dizzy and disoriented, and with handcuffs behind Plaintiff's back, Plaintiff was moved by the CITY, by whom Plaintiff believes to be ETHERIDGE, to Defendant CITY's Law Enforcement vehicle.

926.    At that time the Plaintiff had suffered a torn rotator cuff and detached tendon in Plaintiff's right shoulder, three herniated discs in Plaintiff's neck, and three herniated discs and one torn disc in Plainff's lower back, nerve damage in Plaintiff's right wrist, nerve damage on th right side of Plaintiff's  body, and retsricted blood flow to Plaintiff's brain (brain damage).

927.    After an estimated five minutes, the Plaintiff was then placed in the CITY'S Law Enforcement vehicle.

928.    The CITY'S Law Enforcement officer was in the driver's seat of that vehicle.

929.    The vehicle was running, the air-conditioning was not functioning, and the windows were completely rolled up.

930. Plaintiff complained to the CITY'S Law Enforcement officer the vehicle was too hot. Plaintiff again requested medical attention. No assistance was provided.

931. The CITY'S Law Enforcement officer agreed the vehicle was too hot, stated the air-conditioning was non functioning, exited the vehicle, and closed the door.

932. The Plaintiff remained in that vehicle in the back seat with handcuffs behind Plaintiff's back while the windows continued to be completely rolled up.

933. The temperature was was an estimated 85°F outside.

934. The temperature inside of the vehicle increased to over 120° F.

935. Immediately on the sidewalk in front of the car were Defendant CITY, by and through ETHERIDGE, COLLINS, Defendant OCHKIE , the CITY'S driver, and SHERIFF'S deputies observing the Plaintiff.

936. . Plaintiff became dizzy and had difficulty talking.

937. While in the back seat and in handcuffs, Plaintiff moved Plaintiffniff's head back and forth and moved Plainiff's lips to get the attention of the CITY, by and through ETHERIDGE, COLLINS, Defendant OCHKIE, the CITY'S driver, amd SHERIFF'S deputies, who were observing the Plaintiff.

938. The CITY, ETHERIDGE, COLLINS, Defendant OCHKIE, Defendant CITY'S Driver and SHERIFF'S deputies were aware the vehicle had non functioning air conditioning and the fan motor was running.

939. No efforts were made to assist the Plaintiff, to remove the Plaintiff from the vehicle, to roll down the windows, nor totrpovide medical attention.

940.    After an estimated 15-20 minutes of being in the vehicle, the Plaintiff physically passed out falling over onto the seat hitting the Plaintiff's head.

941.    To Plaintiff's best infromation and belief, the temperature inside the vehicle continued to over 120 degrees F.

942.    Again, no efforts were made to assist the Plaintiff, that being  Plaintiff from the vehicle, roll down the windows, loosen the handcuffs, provide Plaintiff with any water, nor provide any medical attention.

943.    The CITY'S Law Enforcement /driver entered the vehicle and proceeded to drive the Plaintiff to the CITY'S POLICE station.

944.    Enroute to the station, a few minutes later the Plaintiff briefly regained consciousness.

945.    Upon briefly regaining consciousness, Plaintiff again requested medical assistance, inclusive of asking that Defendant CITY's Law Enforcement officer/driver take Plaintiff to the local hospital while the vehicle was passing by.

946.    Plaintiff's was told to "sit back and relax" as Plaintiff was being brought to the POLICE station.

947.    To Plaintiff's best information and belief, Plaintiff again lost consciousness and did not regain consciousness until arriving at the CITY'S POLICE station at which time, to Plaintiff's best information and belief, the CITY made efforts to revive Plaintiff with smelling salts.

948.    To Plaintiff's best information and belief, Plaintiff was in the CITY'S Law Enforcement vehicle a total time of at least forty five (45) minutes.

949.     Handcuffs remained behind Plaintiff's back the entire time.

950.     Unbwknownst to the Plaintiff, the Plaintiff had additionally suffered a stroke, and neurological damage to Plaintiff's brain

951.     While in continued pain and shock, dizzy, with trouble breathing, in handcuffs, Plaintiff was subsequently physically brought to an "interrogation room" located at the CITY, City of St. Augustine Police Department (POLICE).

952.     The Plaintiff was placed in the interrogation room by the Defendants to obtain a "confession" from the Plaintiff.

953.     Despite Plaintiff's constitutional right, Plaintiff was placed in the "interrogation room" with freezing temperatures, those being somewhere in the 60s Fahrenheit.

954.     Due to the freezing temperature, ETHERIDGE, COLLINS, and Defendant OCHKIE, were wearing jackets.

955.     Plaintiff was wearing a T-shirt and  walk and shorts, and was not allowed this opportunity.

956.     Due to pain and shock, with difficulty talking, while perspiring, Plaintiff requested of the CITY, by and through ETHERIDGE and COLLINS, that the handcuffs be removed and Plaintiff be allowed to use the restroom.

957.     These requests were denied.

958.     Plaintiff additionally again requested medical attention.

959.     That request was denied.

960.     Plaintiff was subsequently verbally and physically aggressively questioned by and through the ETHERIDGE and COLLINS while Defendant OCHKIE and other Law

Enforcement officers were nearby.

961.    ETHERIDGE slammed his fists on a table in front of the Plaintiff, physically came towards the Plaintiff, and was raising his voice demanding that the Plaintiff "confess".

962.    While Plaintiff remained in extreme pain and shock and in freezing conditions, Plaintiff continued to request medical attention of the CITY, by and through ETHERIDGE, COLLINS and Defendantv OCHKIE.

963.    Plaintiff requested to use the restroom. Those requests were denied.

964.    Plaintiff lost control of Plaintiff's bodily functions.

965.    The CITY, by and through ETHERIDGE, continued to question Plaintiff with a raised voice, pounding on the table an estimated 4 feet from the Plaintiff, leaning over towards the Plaintiff, threatening the Plaintiff with a long prison term, and demanding that Plaintiff confess to the charges.

966.    Plaintiff continued to deny any wrongdoing and requested medical attention

967.    That request was again ignored.

968.    The CITY, by and through ETHERIDGE, COLLINS, and Defendant OCHKIE requested consent of Plaintiff to search Plaintiff's truck as well as take fingerprints, blood and DNA tests from the Plaintiff.

969.    Plaintiff complied with those requests.

970.    ETHERIDGE, and COLLINS, continued to threaten Plaintiff with criminal charges and threatened that Plaintiff would be transferred to the local jail.

971.    After a period of an estimated an hour and one half of being detained at the CITY POLICE, ETHERIDGE, OCHKIE and Defendant COLLINS, after reviewing the

evidence, allowed Plaintiff to move around, removed all the handcuffs, and allowed Plaintiff to use the restroom.

972.    After a period of time, the CITY, by and through the Defendant OCHKIE apologized to the Plaintiff on behalf of the Defendant's Police Department and indicated the investigation would continue.

973.    Plaintiff was then released and free to leave. Plaintiff's cell phone was confiscated.

974.    Upon being released, no efforts were made to question the Plaintiff regarding the Plaintiff's injuries nor offer medical assistance.

975.    During the time Plaintiffnif was in the custody, Plaintiffnff had a right to be free from unreasonable search and seizure pursuant to the Fourth and Fourteenth Amendments to the United Constitution, 42 USC Section 1983.

976.    Defendant OCHKIE, as a Law Enforcement officer, knew or should known that failing to provide medical assistance to a serious medical need of a detainee such as Plaintiff would amount to deliberate indifference in violation of that constitutional right.

977.    Defendant OCHKIE'S failure to obtain medical treatment for Plaintiff was in violaion of that right.

978.    The actions of Defendant OCHKIE were willful and intentional.

979.    As a result Plaintiff suffered injury to Plaintiffnff's brain and and permanent injury to Plaintiffff's brain, that being extensive nerve trauma resulting in damage to Platinff's sight resulting in a potential shortened lifespan,, memory issues, cognitive dysfunction, difficulties walking and balance, physical dysfunction, migraine heaadches, tinnitus, severe mental angush, the need for extensive medical treatment, accrual of medical bills,

114

loss of income and loss of the enjoyment of life. The losses are continuing.

980.    Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and agreement to pay counsel a reasonable fee.

WHEREFORE Plaintiffff demands judgement for damages against Defendant OCHKIE, punitive damages , attorneys fees pursuant to 42 USC Section 1988 and trial by jury.

DAVID W. GLASSER, ESQUIRE
118 Orange Avenue
Daytona Beach, Florida 32114
Telephone: 386-252-0175
Facsimile: 386-257-0246
Fla. Bar No. 780022
Email: david@dglasserlaw.com
legal@dglasserlaw.com
Attorney for Plaintiff